UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

PETER R. TURNER, LATANYA
ANDREWS, and THELMA LEONARD,

Defendants.

Crim. Action No. 06-0026 (CKK)

**MEMORANDUM OPINION**
(July 12, 2006)

Currently before the Court is the Government's Notice of Intent to Introduce Evidence

Under Rule 404(b), Pre-Trial Motion to Admit Such Evidence, and Memorandum of Law in

Support.  Upon a searching examination of the Government's motion, Defendant Peter Turner's

Partial Opposition, the Government's Reply, the relevant case law, and the entire record herein, the

Court shall deny-in-part without prejudice the Government's motion.[1]  Specifically, based on the

present record, the Court – pursuant to its discretion following an analysis of the contours of Federal

Rule of Evidence 404(b) and the balancing test established by Federal Rule of Evidence 403 –

concludes that the Government may not introduce in its case-in-chief at trial evidence of Defendant

Turner's January 21, 1972 court martial conviction under an exception to the "other crimes,

wrongs, or acts" prohibition contained within Rule 404(b).

---

[1] The Court denies-in-part the Government's Rule 404(b) motion because the motion itself
also notes that the Government will seek to introduce evidence at trial that Defendant Turner uttered
forged checks drawn on Vester Mayo's bank account after her coma and death.  *See* Gov't's 404(b)
Mot. at 3, 6-7.  At the June 22, 2006 status conference, counsel for Defendant Turner indicated that
he saw no basis to oppose introduction of this evidence (thereby conceding this portion of the
Government's motion), but offered that Defendant Turner would have a defense to such an
allegation.

# I: BACKGROUND

*A.    The Present Charges*

On January 31, 2006, Peter R. Turner, LaTanya Andrews, and Thelma Leonard were indicted in this district in a three-count indictment charging each of them with conspiracy to fraudulently obtain money from the Federal Employees Group Life Insurance ("FEGLI") program, a group term life insurance program established by the government, in violation of 18 U.S.C. § 371 ("Conspiracy to Commit Offense or to Defraud United States"), and Andrews and Turner each were also charged with one count of bribery in violation of 18 U.S.C. § 201(b) ("Bribery of Public Officials and Witnesses").  Andrews was a payroll technician for the Department of Veterans Affairs Medical Center (hereinafter, "DVAMC"), Turner was a volunteer driver for the DVAMC, and Leonard was an associate of Turner.  *See* Indictment ¶¶ 1-3.  The Indictment was unsealed on February 8, 2006.

The Indictment alleges that Turner, Andrews, and Leonard conspired between December 8, 2000 through on or about January 10, 2006, *id.* ¶ 7, to file a forged FEGLI form falsely designating Turner as a one-half life-insurance beneficiary for Vester Mayo, a fellow employee of the DVAMC and his former girlfriend, *id.* ¶ 5, in Mayo's official personnel folder, *id.* ¶¶ 9-10.  Andrews allegedly used her position as an employee of the DVAMC to cause the forged FEGLI form to be included in Mayo's official DVAMC personnel folder.  *Id.* ¶ 12.  Leonard allegedly assisted the conspiracy by signing the forged beneficiary form as a signature witness knowing that it had not been signed by Mayo.  *Id.* ¶ 11.

On or about December 8, 2000, while still an active employee of the DVAMC and while insured under the FEGLI program, Mayo suffered a stroke and was hospitalized.  *Id.* ¶ 6.  Shortly thereafter, Mayo lapsed into a coma and died on or about December 22, 2000.  *Id.*  Following her

2

death and the alleged completion of the conspirators' plans, Turner then filed a claim with the

FEGLI program, obtaining a payment of approximately $20,500. *Id.* ¶ 21. Allegedly in return for

their loyalty and assistance in the scheme, Turner paid Andrews $1,000 from the proceeds on or

about February 7, 2001, *id.* ¶ 22, and later – on or about July 16, 2002 – paid another $1,000 to

Leonard's spouse, who is now deceased, for the Leonards' cooperation, *id.* ¶ 23.

Following Defendants' arraignments in February 2006, this Court held a series of status

conferences with Defendants present. Following both the April 6, 2006 and the June 22, 2006

status conferences, the Court set schedules for various pre-trial filings. Pursuant to the Court's

schedules, the Government has submitted a Notice of Intent to Introduce Evidence Under Rule

404(b), Pre-Trial Motion to Admit Such Evidence, and Memorandum of Law in Support; Defendant

Turner has filed a Partial Opposition, contesting only the Government's plans to introduce evidence

of a 1972 court martial conviction as "other crimes" evidence against him under Rule 404(b); and

the Government has filed a Reply.

B.    *Defendant Turner's 1972 Court Martial Conviction*

Over thirty-four (34) years ago, on January 21, 1972, Defendant Peter Turner appeared

before a general court martial and was found guilty of violating Articles 121 (larceny) and 134

(attempted bribery) of the Uniform Code of Military Justice ("UCMJ"). *See* Gov't's Reply, Ex. B

(DA Form 2800, CID Report of Investigation, dated 1/28/72) at 1. Following his court martial,

Defendant Turner was required to "forfeit all pay and allowances. To be confined at hard labor for

1 year. To be discharged from the service with a bad conduct discharge, and To be reduced to the

grade of Private E-1." *Id.*, Ex. A (General Court-Martial Order No. 16, dated 4/1/72). Contrary to

Defendant Turner's claims that this conviction was ultimately overturned on appeal following a

grant of clemency, *see* Def. Turner's Opp'n at 5, ¶ 8, the evidence before the Court at this time

3

indicates that the Prisoner Assignment and Clemency Board at the military penitentiary at Fort Leavenworth, Kansas, merely commuted his sentence of hard labor from one (1) year to nine (9) months on May 31, 1972, *see* Gov't's Reply, Ex. D (General Court Martial Order No. 1437, dated Dec. 14, 1972) ("In the general court-martial case of Specialist Five Peter R. Turner, Jr., . . . the sentence to . . . confinement at hard labor for 1 year . . . has been affirmed pursuant to Article 66. The . . . sentence will be duly executed, but by order of the Secretary of the Army, dated 26 June 1972, so much of the sentence to confinement as is in excess of nine months, was remitted.").  As such, Defendant Turner's court martial convictions remains a possible "other crime[], wrong[], or act[]" that may possibly be admitted against him pursuant to an exception to Federal Rule of Evidence 404(b).

Defendant Turner's general court martial conviction resulted from an incident that occurred on September 6, 1971, when members of the military police discovered that Turner – along with an accomplice – falsified a Material Requisition Expedite form ("MRE") in an attempt to obtain government property from the United States Army Depot at Long Binh, Vietnam.  *See* Gov't's Reply, Ex. B (DA Form 2800, CID Report of Investigation, dated 1/28/72) at 2.  Specifically, Defendant Turner and his accomplice presented a falsified MRE at a Depot warehouse to obtain by fraud a truck-load of 1,920 U.S. Army flashlights then valued at $3,340.80, and then again at the Depot's cargo control gate in an attempt to exit the Depot with the stolen property and presumably sell the flashlights on the black market.  *Id*.  The military police determined that the MRE was fabricated, and Turner was apprehended and directed to report under escort to the Provost Marshal's office with the load.  *Id*.  While in route, Turner offered a military officer a bribe of $300 to release him.  *Id*.  Following an investigation begun on September 27, 1971 and completed on November 5, 1971, Turner was charged with an convicted of larceny and attempted bribery in violation of the

4

UCMJ. *Id.*

## II: DISCUSSION

A.       *The Relevant Standards*

While the Government indicated at various status conferences in this case that it might

attempt to seek admission of Defendant Turner's 1972 court martial conviction through Federal

Rule of Evidence 609(a), the Government in its present Rule 404(b) motion has apparently decided

against such a course given the rather strict limitations on Rule 609.  *See* Fed. R. Evid. 609(b)

advisory committee's note (1974) ("It is intended that convictions over 10 years old will be admitted

very rarely and only in exceptional circumstances."); *United States v. Lewis*, 626 F.2d 940, 950

(D.C. Cir. 1980); *see also United States v. Bibbs*, 564 F.2d 1165, 1170 (5th Cir. 1977), *cert.*

*denied*, 435 U.S. 1007, 98 S.Ct. 1877, 56 L.Ed.2d 388 (1978) ("Congress intended that trial courts

be extremely cautious in admitting evidence of remote convictions.").  Instead, the Government

effectively seeks to circumvent these strictures by turning to Federal Rule of Evidence 404(b), which

establishes the general rule that "[e]vidence of other crimes, wrongs, or acts is not admissible to

prove the character of a person in order to show action in conformity therewith" but stipulates that

such evidence "may . . . be admissible for other purposes, such as proof of motive, opportunity,

intent, preparation, plan, knowledge, or absence of mistake or accident . . . ."  Fed. R. Evid. 404(b).

The D.C. Circuit has described Rule 404(b) as one "of inclusion rather than exclusion," *United*

*States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir. 2000), and has explained that it excludes only

evidence that "is offered for the sole purpose of proving that a person's actions conformed to his or

her character," *United States v. Long*, 328 F.3d 655, 661 (D.C. Cir. 1993), *cert. denied*, 540 U.S.

1075, 124 S.Ct. 921, 157 L.Ed.2d 747 (2003).

To the extent that it is not already admissible due to being direct and substantive evidence of the charged offenses, evidence of other crimes, wrongs, or bad acts is admissible under Federal Rule of Evidence 404(b) if offered for a permissible purpose. Such permissible purposes include proof of intent, motive, opportunity, plan, knowledge, identity or absence of mistake or accident. *United States v. Pindell*, 336 F.3d 1049, 1056 (D.C. Cir. 2003); *United States v. Miller*, 895 F.2d 1431, 1436 (D.C. Cir. 1990); *see also United States v. Brazel*, 102 F.3d 1120, 1153-54 (11th Cir. 1997) (threats made by defendant to cooperating co-conspirator in holding cell was properly admissible under Rule 404(b) as evidence showing "consciousness of guilt"). The Court of Appeals for this Circuit has made clear, however, that Rule 404(b) merely defines the one *im*permissible purpose for bad act evidence; it does not define the set of permissible purposes for use of such evidence. *Miller*, 895 F.2d at 1436. However, it can be said that "[c]orroboration, in and of itself, is not a separate purpose belonging in the open class of permissible purposes referred to in Rule 404(b)'s second sentence." *United States v. Linares*, 367 F.3d 941, 949 (D.C. Cir. 2004) (quoting *United States v. Bailey*, 319 F.3d 514, 520 (D.C. Cir. 2003) (noting that "[t]o decide if Rule 404(b) evidence is admissible for corroboration, the court must determine what is being corroborated and how . . . . The label 'corroboration' [] merely invites a closer look at exactly how the evidence may be probative.")).

The Court undertakes a two-part analysis to determine admissibility in the Rule 404(b) context. *See Miller*, 895 F.2d at 1435. First, the Court considers whether the evidence is "probative of some material issue other than character." *United States v. Clarke*, 24 F.3d 257, 264 (D.C. Cir. 1994); Fed. R. Evid. 401. Second, if the Court deems the evidence to be relevant, the Court should exclude the evidence only if probative value "is substantially outweighed by the danger of unfair

6

prejudice." Fed. R. Evid. 403; *Long*, 328 F.3d at 662.  In close cases, the rule tilts toward the

admission of the uncharged conduct evidence.  *See United States v. Johnson*, 802 F.2d 1459, 1464

(D.C. Cir. 1986) ("the balance should be generally struck in favor of admission when the evidence

indicates a close relationship to the event charged") (quoting *United States v. Day*, 591 F.2d 861,

878 (D.C. Cir. 1978)).  The D.C. Circuit has recognized that "Rule 404(b) evidence will often have

. . . multiple utility, showing at once intent, knowledge, motive, preparation, and the like." *United

States v. Crowder*, 141 F.3d 1202, 1208 (D.C. Cir. 1998) (en banc).  If evidence is ruled

admissible, the trial court, when the defendant so requests, must give a limiting instruction.  Fed. R.

Evid. 105.  A trial court's Rule 404(b) admissibility determination is reviewed under an abuse of

discretion standard.  *Pindell*, 336 F.3d at 1056-57; *Linares*, 367 F.3d at 946; *see also United

States v. Washington*, 969 F.2d 1073, 1081 (D.C. Cir. 1992) (because "[t]he trial court is in the

best position to perform" the "subjective balancing" that Rule 404(b) and Rule 403 require, its

decision is reviewed only for "'grave abuse'") (citations omitted).

     *B.*    *Analysis*

     According to the Government, "[t]he fraudulent scheme for which Turner was found guilty

by general court martial mirrors the fraudulent scheme that is the subject of the Indictment in this

case."  Gov't's 404(b) Mot. at 8.  The Government, in support of its assertion, stresses that in both

instances, (1) "Turner fabricated government paperwork in order to obtain government property and

funds under false pretenses," and (2) "Turner attempted to enlist a government official through

payment of a bribe, either to obstruct and protect himself from arrest in the prior case, or to further

the fraudulent scheme as charged in this case."  *Id.*  Based on the "similarities" between the two

cases, the Government suggests that "Turner's prior court martial convictions and the acts leading to

them are therefore relevant to the non-character issues in this case of his intent, knowledge, plan,

identity, *modus operandi*, and lack of mistake." *Id.* ("Here, the degree of similarity between the crimes charged in the Indictment and those for which he was convicted by a general court martial is so close as to be nearly identical."); *see also* Gov't's Reply at 3.

Despite the Government's "kitchen sink" approach, it is clear that at least some of the claimed Rule 404(b) exceptions simply are not pertinent to the matter at hand. For instance, it is clear that Turner's 1972 court martial conviction cannot be introduced as evidence of some sort of plan or scheme to defraud the United States. *See United States v. Foskey*, 636 F.2d 517, 523 n.5 (D.C. Cir. 1980) ("Given the time period separating the two arrests, and the Government's failure to provide any evidence of a continuing criminal relationship between Brunson and Foskey, the earlier arrest was not probative of plan or scheme.") (citing *United States v. Burkley*, 591 F.2d 903, 920 (D.C. Cir. 1978), *cert. denied*, 440 U.S. 966, 99 S.Ct. 1516, 59 L.Ed.2d 782 (1979) ("[A] common scheme or plan embrac[es] the commission of two or more crimes so related to each other that proof of one tends to establish the other."); *United States v. Manafzadeh*, 592 F.2d 81, 88 (2d Cir. 1979) (distinguishing "'a connected or inseparable transaction,' in which all the crimes figured" from "entirely separate, later transactions")); *see also United States v. Dothard*, 666 F.2d 498, 502 (11th Cir. 1982) (no plan or scheme can be inferred where there is no "such concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations") (citations omitted). Simply, Defendant Turner's 1972 court martial conviction involved activities which occurred thirty-four (34) years ago, in a foreign country, and revolved around both a different objective and a different group of accomplices. There is no overt connection between the plan or scheme involving the theft of flashlights for which Defendant Turner was convicted of in 1972 and the conspiracy at issue in this action – that is, it cannot be said that the alleged FEGLI conspiracy stretching from late 2000 to early 2001 was a

continuation of a plan or scheme hatched by Defendant Turner in September 1971, or a logical outgrowth of some form of conspiracy begun during that period that has lasted for more than three (3) decades. Rather, two separate plans or schemes are plainly present, with no linking nexus, rendering this exception inapplicable despite the Government's best efforts.

Moreover, contrary to the Government's bold assertion, its surviving claimed exceptions – i.e., *modus operandi*, knowledge, intent, identity, and lack of mistake – run into problems due to "similarity" concerns. "Evidence of a similar act must meet a threshold level of similarity in order to be admissible to prove intent." *Long*, 328 F.3d at 661 (citing *Jankins v. TDC Mgmt. Corp.*, 21 F.3d 436, 441 (D.C. Cir. 1994); *Foskey*, 636 F.2d at 524). "What matters is that the evidence be relevant 'to show a pattern of operation that would suggest intent' and that tends to undermine the defendant's innocent explanation." *Id.* (quoting 2 Weinstein's *Federal Evidence* § 404.22[1][a]). As the D.C. Circuit has emphasized, "the admissible bad acts evidence need not show incidents identical to the events charged, so long as they are closely related to the offense," *United States v. DeLoach*, 654 F.2d 763, 769 (D.C. Cir. 1980), and are probative of intent rather than mere propensity, *Long*, 328 F.3d at 661.

However, in order to determine a "close" relationship or sufficient "similarity," the reviewing court is to consider – in part – temporal proximity. *See Jankins*, 21 F.3d at 347 (finding that the conditions of admissibility under Rule 404(b) were not satisfied because, *inter alia*, the two sets of disputes were "also remote in time"); *Foskey*, 636 F.2d at 523 n.5 (same); *see also United States v. Rollins*, 301 F.3d 511, 519 (7th Cir. 2002) (to pass muster under a Rule 404(b)/Rule 403 analysis, the evidence of "other crimes" must "show sufficient similarities in time and manner to establish relevance to the charged conduct"). As this Circuit has proclaimed, "[t]he temporal (as

well as the logical) relationship between a defendant's later act and his earlier state of mind attenuates the relevance of such proof . . . ." *United States v. Watson*, 894 F.2d 1345, 1349 (D.C. Cir. 1990); *United States v. Childs*, 598 F.2d 169, 174 (D.C. Cir. 1979) (later acts are most likely to show the accused's intent when "they are fairly recent and in some significant way connected with prior material events"); *see also United States v. Jimenez*, 613 F.2d 1373, 1376 (5th Cir. 1980) (where cocaine possession followed the charged heroin transaction by a year, the lapse "depleted the extrinsic offense of any relevance which could have outweighed the peril of jury prejudice").

Here, the Government seeks to introduce evidence of an offense committed by Defendant Turner in a foreign country, in a significantly different setting, with different alleged accomplices, that occurred over thirty-four (34) years ago, when Defendant Turner was only twenty-six (26) years old (as compared to his age now, sixty-one (61) years old).  Not only is the temporal proximity between the two acts at issue quite remote, a fact which substantially attenuates the relevance of the 1972 court martial conviction for the purposes of this case, but to arrive at a conclusion that the 1972 court martial charges and the charges in this case are somehow "similar" involves "reformulation" of the 1972 charges "at a rather high level of generality."  *Jankins*, 21 F.3d at 346. In *Jankins*, the D.C. Circuit expressly rejected such a tactic, concluding:

> [O]ne cannot draw the line precisely between evidence of character and evidence of acts sufficiently similar to show intent or a common scheme.  But when one must, in order to find similarity, define the character of the acts at such a high level of generality as here (greed, strategic behavior), and many of the events occur years after the conduct in dispute, we cannot find the conditions of admissibility under Rule 404(b) satisfied.

*Id.* at 347.

The *Jankins* court rejected an attempt by an employee who brought suit against a developer for breach of an oral employment contract and fraud to use the developer's subsequent heavy-

handed dealings with subcontractors (including evidence of nonpayment and false assertions of

defects) to support his claim that the developer failed to honor its agreements.  *See id.* at 345-48.

Here, the activities in 1972 and 2000-01 are even more different, distinct, and attenuated than those

that the D.C. Circuit faced and rejected in *Jankins*, and the Government must resort to even greater

reformulated generalities to support its contention of "similarity."  As such, under the Government's

theory, Defendant Turner's 1972 charges for which he was convicted are transformed from a

conduct which could best be described as "Defendant, as a young man while in the military,

attempted to physically steal tangible items for later resale on the black market" to conduct which

could instead be characterized by the Government, *see* Gov't's Reply at 3, as "Turner attempted to

circumvent known government procedures and safeguards by submitting fabricated forms, which

were necessary to obtain property that Turner intended to convert to his own use."  The Government

attempts a similar reformulation/resort to generalities when comparing Turner's 1971 attempted

bribe of an arresting military police officer to avoid prosecution to his alleged 2001 gratuities

provided to secure the cooperation of his charged co-conspirators.  *See id.*  Such a heavy-handed

"conversion" creates the danger that the *Jankins* court warned against – namely, when courts begin

to distort their perception to such a degree that an individual's physical theft of flashlights three-and-

a-half decades ago becomes probative to allegations that he conspired with others to fabricate and

forge a life insurance form, then the exceptions within Rule 404(b) completely swallow its

cautionary language.  Given the significant time lapse and the real difference between the crimes at

issue, the Court finds the 1972 court martial conviction simply too "dissimilar" to fall within any

exception provided in Federal Rule of Evidence 404(b).

     Even assuming *arguendo* that the Government's efforts to reshape, reformulate, remold, and

generalize the 1972 court martial charges could successfully squeeze those acts within a Rule

404(b) exception such as mistake, knowledge, *modus operandi*, or intent, the Government would still have to clear the hurdle established by Federal Rule of Evidence 403 – i.e., that the probative value of such evidence is not "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403. As the D.C. Circuit has emphasized, "Rules 403 and 404(b) are not obstacles to be cleared at all costs, even by cutting around corners whenever it is possible to do so. These rules were designed to ensure a defendant a fair and just trial based upon the evidence presented, not upon impermissible inferences of criminal disposition or by confusion of the issues." *Foskey*, 636 F.2d at 525. Even assuming that the Government's argument successfully transversed the contours of Rule 404(b), the Court – in its discretion following a balancing of the relevant concerns – concludes that the 1972 court martial conviction, and the charges thereunder, should be excluded pursuant to Rule 403. Namely, the evidence relating to the court martial is not particularly relevant, is quite distant in time, is absolutely inessential to the Government's case, carries with it the very significant danger that the jury's attention will be redirected to distant events that confuse the real issues in this case, and tends to prove only Defendant Turner's alleged criminal predisposition. *See id.* at 526 (rejecting the evidence under a Rule 403 test because "[t]he evidence of the 1976 arrest was not relevant to any issue in the case, was extremely prejudicial because it tended to prove only the defendant's criminal predisposition, and was not even necessary to prove the prosecution's case"; noting that "the government had no business offering such evidence"). Given the problems with the Government's attempted introduction of Defendant Turner's 1972 court martial conviction under both a Rule 404(b) analysis and a Rule 403 review, the Court – based on the present record – denies-in-part without prejudice the Government's Rule 404(b) motion, as it relates to a request for introduction of such evidence in its case-in-chief.

### III: CONCLUSION

For the reasons set forth above, the Court shall deny-in-part without prejudice the

Government's Notice of Intent to Introduce Evidence Under Rule 404(b), Pre-Trial Motion to

Admit Such Evidence, and Memorandum of Law in Support. Specifically, based on the present

record, the Court – pursuant to its discretion following an analysis of the contours of Federal Rule of

Evidence 404(b) and the balancing test established by Federal Rule of Evidence 403 – concludes

that the Government may not introduce, in its case-in-chief, evidence of Defendant Turner's January

21, 1972 court martial conviction under an exception to the "other crimes, wrongs, or acts"

prohibition contained within Rule 404(b). An appropriate Order accompanies this Memorandum

Opinion.


Date:   July 12, 2006


                                         ____/s/_____
                                         COLLEEN KOLLAR-KOTELLY
                                         United States District Judge