UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | )( | |
| | )( | Criminal No. 06-26-01 |
| v. | )( | Judge Kollar-Kotelly |
| | )( | Sentencing: July 23, 2007 |
| PETER TURNER | )( | |

UPDATE ON DEFENDANT'S MEDICAL SITUATION
AND MOTION TO SELF-SURRENDER SHOULD THE COURT DECIDE
TO DENY DEFENDANT'S REQUEST FOR HOME DETENTION

COMES NOW the defendant, Peter Turner, by and through undersigned counsel, and respectfully submits the following information to update the Court on his changing medical situation. Mr. Turner submits that, given his age, incapacities, and serious medical issues, he should be sentenced to home detention in lieu of incarceration. However, should the Court see fit to deny his request for home detention, Mr. Turner requests that the Court permit him to self-surrender to the Bureau of Prisons. In support of this update and motion, Mr. Turner would show:

1. On July 6, 2007, Mr. Turner filed a Memorandum in Aid of Sentencing. In that memorandum, Mr. Turner detailed as best he could his current medical situation. The full extent of his medical problems is not currently known. Because Mr. Turner's health has been deteriorating recently, his doctors, including several specialists who are being brought in as consults, are in the process of reevaluating his conditions. While Mr. Turner has numerous medical problems, his main problems are chronic congestive heart failure, pulmonary problems causing severe breathing difficulties, worsening renal failure (Mr. Turner had to have an emergency hospitalization for acute renal failure last month), and neurological and rheumatological conditions that are making it increasingly difficult for him to walk, control bodily functions, and care for himself.

1

2.  With his Memorandum in Aid of Sentencing, Mr. Turner submitted a letter from Marshall Balish, M.D., Ph.D.  Dr. Balish is Mr. Turner's neurologist at the Veterans Administration Medical Center (VAMC) here in D.C.  This letter gave a fairly good overview of Mr. Turner's medical problems.  However, the letter was several months old at the time it was submitted.  Dr Balish has since written a more up-to-date letter.  This letter is attached.  Attachment, Update Letter from Dr. Balish.  It should be noted that, in his letter, Dr. Balish stresses that Mr. Turner has "multiple serious problems" and that he "has become increasingly disabled recently."  Also, he notes that Mr. Turner has several conditions that are not yet fully diagnosed and that "evaluation of his medical and neurological problems is in progress."  Moreover, he concludes by saying that "management of [Mr. Turner's] many medical problems is to sa[y] the least difficult."

3.  On July 25, 2007, Mr. Turner has a consult with a cardiologist, Dr. Kimmel, in Willingboro, New Jersey.  This appointment concerns Mr. Turner's worsening congestive heart failure.  Undersigned counsel has confirmed this appointment with Dr. Kimmel's office.

4.  On July 25, 2007, Mr. Turner has a follow-up appointment with Dr. Levinson in Willingboro, New Jersey.  Dr. Levinson is a pulmonologist and has been treating Mr. Turner because of his worsening breathing problems.  This condition may be related to Mr. Turner's heart condition. Undersigned counsel has confirmed this appointment with Dr. Levinson's office.

5.  On August 2, 2007, Mr. Turner has a follow-up visit with his neurologist, Dr. Balish, at the VAMC.  This appointment concerns Mr. Turner's worsening

neuropathy and is part of an on-going evaluation of that condition. Undersigned counsel has confirmed this appointment with the Dr. Balish himself.

6. On August 6, 2007, Mr. Turner has a consult with a urologist, Dr. Pironti in Marton, New Jersey. This appointment concerns Mr. Turner's recent acute renal failures and the apparently related problem concerning the significant amount of blood that is now passing in his urine. There is a concern that Mr. Turner might have prostrate cancer. Undersigned counsel has confirmed this appointment with Dr. Pironti's office.

7. On August 16, 2007, Mr. Turner has a consult with a rheumatologist, Dr. Brecher, in Willingboro, New Jersey. This appointment concerns the significant amount of swelling that Mr. Turner gets in his joints—especially his knees—and his probable diagnoses of lupus. Undersigned counsel has confirmed this appointment with Dr. Brecher's office. This appointment had been scheduled for July 23, 2007; however, it had to be rescheduled because Mr. Turner has to be before the Court on that day.

8. Mr. Turner has a follow-up appointment with Dr. Messey on October 18, 2007 in Willingboro, New Jersey. Dr. Messey has been organizing Mr. Turner's referrals to the various specialists. When Mr. Turner meets with Dr. Messey on October 18, 2007, Dr. Messey will review reports from these specialists and develop a more refined plan of treatment for Mr. Turner. Mr. Turner reports that Dr Messey has indicated that, depending on the results of the various specialists' evaluations, he may order that Mr. Turner be hospitalized.[1]

9. Of perhaps lesser note, on August 7, 2007, Mr. Turner will be fitted for a motorized wheel chair that he is getting from the VAMC because of his increasing

---

[1] Unfortunately, Dr. Messey's office is closed until July 23, 2007, and undersigned counsel has not been able to verify this information. However, there is no reason for thinking that the information is incorrect. Indeed, given Mr. Turner's current situation, it seems highly probable that his overseeing doctor is contemplating some sort of hospitalization.

problems with mobility.  Also, on September 4, 2007, Mr. Turner will be seen by an ophthalmologist for an evaluation regarding his need for cataract surgery in both eyes. Mr. Turner is in serious need of such surgery.  However, because of Mr. Turner's diabetes, cataract surgery poses special problems.

## DISCUSSION AND REQUEST

Mr. Turner is a sixty-year-old man who suffers from numerous serious and complex medical problems that have not yet been fully diagnosed.  Because of his medical problems, Mr. Turner is also seriously disabled.  Mr. Turner's health is currently deteriorating, and his doctors, including several specialists who are being brought in as consults, are in the process of reevaluating his condition.  It is submitted that, if Mr. Turner were to be incarcerated, it would result in as serious interruption, setback, and loss in his medical treatment, as it would be impossible for doctors affiliated with the Bureau of Prisons (BOP) to simply pick up where the doctors he is seeing now have left off. Moreover, there are concerns that the BOP would not be able to provide the level of medical care that Mr. Turner is currently receiving and that it would not be able to adequately provide Mr. Turner with the basic daily-living assistance that he needs because of his incapacities.[2]  Additionally, if Mr. Turner were incarcerated the BOP would have to provide extensive care to Mr. Turner and pay for all his medical treatment. Accordingly, Mr. Turner submits that he should be sentenced to home detention in lieu of incarceration.  However, if the Court sees fit to deny his request for home detention, then Mr. Turner requests that the Court allow him to self-surrender to the BOP at a later date. To permit Mr. Turner to self-surrender at a later date would not only better insure

---

[2] Mr. Turner is incontinent of bowel and bladder, is largely unable to walk, has difficulty feeding and dressing himself, and must be attached to an oxygen pump during the nighttime.

continuity of care and allow him get closer to completing the medical reevaluation of his conditions that is currently in process, but it would also allow him to get information that would aid the Bureau of Prisons in providing for his complex medical needs. Additionally, Mr. Turner takes numerous medications and must be attached to an oxygen pump at night. It thus seems that special arrangements will need to be made before Mr. Turner can actually be taken into custody.

WHEREFORE, the defendant, Peter Turner, updates the Court on his medical situation and moves the Court to allow him to self-surrender to the BOP should the Court deny his request for home detention in lieu of incarceration.

Respectfully submitted,

_____/s/_____
Jerry Ray Smith
Counsel for Peter Turner
717 D Street, N.W.
Suite 400
Washington, D.C. 20004
Phone: (202) 347-6101