UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>PETER R. TURNER, )<br>)<br>Defendant. ) | Criminal No. 06-26-01<br>Judge Kollar-Kotelly |

**PETER R. TURNER'S MOTION FOR RELEASE PENDING APPEAL**

Defendant Peter R. Turner, by and through undersigned counsel,[1] hereby moves for release pending appeal pursuant to 18 U.S.C. § 3143(b).

## INTRODUCTION

Mr. Turner is a sixty-year old disabled veteran who suffers from extraordinary, degenerative ailments that prevent him from performing even the most basic tasks of daily living without assistance. Letters from Mr. Turner's doctors written after his sentencing confirm that Mr. Turner's health has not, and will not, improve. His afflictions, in fact, are progressing and he requires close medical supervision without which he could continue to deteriorate rapidly.

In light of his severe medical condition, Mr. Turner intends to raise on appeal the issue of whether this Court's imposition of imprisonment, rather than an equivalent term of home detention, was reasonable. *See United States v. Booker*, 543 U.S. 220 (2005) (instructing courts to review sentences in light of the factors set forth in 18 U.S.C. § 3553(a)); 18 U.S.C. § 3553(a)(2)(D) ("The court, in determining the sentence to be imposed, shall consider the need for the sentence imposed to provide the defendant with needed . . . medical care . . . <u>in the most effective manner</u>.")

---

[1] Counsel was appointed in November by the United States Court of Appeals for the District of Columbia Circuit to represent Mr. Turner in his appeal, No. 07-3107.

(emphasis added).  Since the issue of whether Mr. Turner's medical condition warrants a sentence of home detention poses the required close question, the resolution of which is likely to result in a sentence that does not include a term of imprisonment, and since the other statutory requirements for release pending appeal are satisfied, Mr. Turner respectfully requests release pending appeal so that he may continue receiving needed medical treatment from physicians familiar with his condition.[2]  *See* 18 U.S.C. § 3143(b); Fed. R. Crim. P. 46(c).

## PROCEEDINGS SINCE SENTENCING

On September 7, 2007, this Court sentenced Mr. Turner to two concurrent thirty-three month terms of imprisonment followed by supervised release for two years, restitution in the amount of $20,500, and a $200 special assessment.  On September 20, 2007, the judgment of conviction reflecting this sentence was filed.  *See* Judgment in a Criminal Case [Docket Entry #109], attached as Exhibit 1.  The judgment ordered Mr. Turner to self-surrender to an institution designated by the Bureau of Prisons on a date not before October 14, 2007.  *Id.*  Mr. Turner filed a timely notice of appeal on September 21, 2007.  *See* Notice of Appeal [Docket Entry # 108].

By letter dated November 7, 2007, the Bureau of Prisons instructed Mr. Turner to report to Federal Correctional Institution Butner ("FCI Butner"), located in the town of Butner, North Carolina, on November 29, 2007.  On November 13, 2007, this Court entered an Order of Surrender requiring Mr. Turner to comply with those reporting instructions.  *See* 11/13/07 Order of Surrender [Docket Entry #112].

On November 21, 2007, Mr. Turner moved the United States Court of Appeals for the District of Columbia Circuit for release pending appeal.  On November 28, 2007, the Court of

---

[2] If released pending appeal, Mr. Turner will continue to reside with his wife in Clinton, Maryland, within driving distance of the Department of Veterans Affairs Medical Center in Washington, D.C., where he is currently undergoing coordinated treatment for his many ailments.

Appeals administratively stayed this Court's September 7, 2007 sentence and November 13, 2007 order to surrender. *See* 11/28/07 Order [Docket Entry #113], attached as Exhibit 2. The Court of Appeals gave Mr. Turner the opportunity to apply, in the first instance, with this Court for release pending appeal, indicating:

> It is unclear from the record whether the district court is aware of three letters, all written after appellant was sentenced, from doctors who treated appellant. . . . These letters suggest that appellant's condition may be deteriorating, thus casting doubt on the determination that appellant's ailments are "under control."

## MR. TURNER'S MEDICAL HISTORY

The record reflects that Mr. Turner suffers from a myriad of serious illnesses, which at the time of sentencing included:

- Refractory asthma requiring treatment with steroids and multiple inhalers, as well as visits to the Department of Veterans Affairs Medical Center in Washington, DC;

- Sleep apnea requiring the use of a continuous positive airway pressure ("CPAP") device and oxygen at night;

- Post traumatic stress disorder resulting in chronic headaches and seizures;

- Congestive heart failure;

- Gout and degenerative joint disease requiring treatment with narcotics when anti-inflammatory and other medications fail to work;

- Diabetes, which while treated by medication was still not adequately controlled;

- Worsening peripheral neuropathy (*i.e.*, pain and numbness in the extremities);

- Worsening renal failure;

- Temporary spells of blindness the cause of which was not diagnosed; and

- Possibly an autoimmune disease such as lupus.

*See* Second Update on Defendant's Medical Situation [Docket Entry #107], attached as Exhibit 3, at ¶¶ 3-9 and the July 11, 2007 letter from Dr. Marshall Balish attached thereto. Even then, Mr. Turner was unable to perform basic tasks of daily living without assistance. *See id.*

Three letters, written by Mr. Turner's doctors after his September 7, 2007 sentencing, demonstrate that his condition continues to decline and risks greater deterioration without close, continuous medical supervision. Dr. Balish, Mr. Turner's Department of Veterans Affairs' neurologist, advises that Mr. Turner "is under treatment for multiple serious medical problems. As I have written before, <u>he will not improve from these and is progressing in fact</u>." 9/26/07 Letter from Dr. Balish, attached as Exhibit 4 (emphasis added).[3] Dr. Pascal Pironti, Mr. Turner's urologist, warns that Mr. Turner requires "close medical supervision without which he could continue to deteriorate rapidly." 9/18/07 Letter from Dr. Pironti, attached as Exhibit 5.[4] A third doctor, Dr. Edwin Messey, offers a similar opinion: "Mr. Turner needs continuous medical care." 9/26/07 Letter from Dr. Messey, attached as Exhibit 6.[5]

These letters are significant in at least three other respects. *First*, they reflect that Mr. Turner requires even more testing before doctors will understand his condition fully. Dr. Balish states that "[f]urther evaluation including CAT scans of his chest and MRI of the brain and a stress test (to assess his chest pain) [is] required to further assess him for these serious medical conditions." *See* Ex. 4. Dr. Balish also notes that the question of whether Mr. Turner suffers from lupus remains unanswered. *Id.*[6] Dr. Messey believes that Mr. Turner "probably needs a kidney biopsy for definitive diagnosis." *See* Ex. 6.

---

[3] Dr. Balish's September 26, 2007 letter adds that external stress worsens Mr. Turner's post traumatic stress disorder and may make "it more difficult to manage his medical problems." On December 6, 2007 counsel spoke with Dr. Balish, who advised that his September 26, 2007 remains accurate.

[4] On December 3, 2007 counsel spoke with Dr. Pironti, who advised that his letter dated September 18, 2007 remains accurate.

[5] On November 30, 2007 counsel spoke with Dr. Messey, who has not seen Mr. Turner since writing his September 26, 2007 letter. Dr. Messey advised that he referred Mr. Turner for additional consultation with a nephrologist.

[6] *Compare* Ex. 3 (7/11/07 Balish letter, "he is now being worked up for possible autoimmune disease such as lupus") *with* Ex. 4 ("[T]he question has been raised of lupus.").

4

*Second*, the letters reveal that Mr. Turner's current regimen of medication has not stemmed the deterioration of his condition. Dr. Balish explains that anti-inflammatory and gout medications do not always work as a treatment for Mr. Turner's gout and degenerative joint disease, requiring at times the use of narcotics (percocet). *See* Ex. 4. Dr. Balish further advises that Mr. Turner's diabetes is still not adequately controlled by medication, which has led to damage to his peripheral nervous system and likely his kidneys. *Id.* The doctor's July 11 letter made no mention of peripheral nervous system or kidney damage attributable to Mr. Turner's diabetes. *See* Ex. 3. Doctors Pironti and Messey concur that Mr. Turner's diabetes is not under control. *See* Ex. 5 (Pironti) (explaining Mr. Turner's compromised renal failure is exacerbated by severe diabetes, "which has been difficult to control, despite insulin."); Ex. 6 (Messey) ("He has diabetes, which is poorly controlled.").

*Third*, the September 26 letter from Dr. Balish specifies additional concerns about Mr. Turner's condition that were not identified prior to sentencing. As noted above, Dr. Balish reports that Mr. Turner has also suffered nervous system and kidney damage. Dr. Balish's September 26 letter reveals other areas of decline not described in his July 11 letter. For example, Mr. Turner suffers from progressive neurologic syndrome with tremor and myoclonus, which has left Mr. Turner "more and more impaired." *See* Ex. 4. Furthermore, Mr. Turner suffers from severe neuropathy, which prevents him from walking without assistance of a walker. *Id*. Even then, respiratory ailments cause Mr. Turner to stop after short distances because he may get short of breath and dizzy. *Id.* Dr. Balish states that "in the past weeks" Mr. Turner's "breathing [has been] bad enough to prevent him from leaving his house." *Id.*

In sum, not all of Mr. Turner's numerous ailments have been adequately diagnosed. Mr. Turner requires even more testing -- including CAT scans and an MRI -- to fully diagnose the

5

symptoms from which he suffers.  *See* Ex. 4.  And those conditions that have been diagnosed -- for example his diabetes and gout -- are not being controlled consistently by medication.  *See, e.g., id.*  Simply put, Mr. Turner requires close and continuous attention to assess and to respond to deteriorating medical conditions, not just the administration of a prescribed course of medication to address a static medical situation.

## ARGUMENT

I.     The Applicable Legal Standard

18 U.S.C. § 3143(b)(1) supplies the governing legal standard and provides that a court shall order release pending appeal if it finds:

> (A)   by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released. . . ; and
>
> (B)   that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in (i) reversal, (ii) an order for a new trial, (iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b)(1); *see also* Fed. R. Crim. P. 46(c).  When both prongs of this standard are satisfied, a sentencing court "shall order the release of the person pending resolution of the appeal." 18 U.S.C. § 3143(b)(1)(B) (emphasis added); *see United States v. Quinn*, 416 F. Supp. 2d 133, 137 (D.D.C. 2006).  This standard does not require a showing of a likelihood of success on the merits of the appeal; rather, the standard is whether a defendant presents "a 'close' question or one that very well could be decided the other way." *Quinn*, 416 F. Supp. 2d at 136 (quoting *United States v. Perholtz*, 836 F.2d 554, 556 (D.C. Cir. 1988) (per curium)).  A court's disagreement with the position advanced by a defendant is not sufficient to deny a motion for release pending appeal. *See, e.g., id.* (granting motion for release pending appeal even though the court found the cases defendant relied upon distinguishable because "the Court cannot say that the question for appeal is

6

insubstantial or not susceptible to a different answer"); *United States v. Safavian*, No. 05-0370, 2006 WL 3378479, at *1 (D.D.C. Nov. 16, 2006) (granting motion for release even though the court was "confident in its decisions and unpersuaded by the defendant's arguments" because defendant presented a close question that could be decided the other way).

Mr. Turner satisfies this standard.

A.    Mr. Turner Is Not Likely To Flee Or To Pose A Danger To The Community

In the recent proceedings before the Court of Appeals, the government did not contend that Mr. Turner poses a risk of flight or is a danger to the community. *See* Opp. to Mot. for Release Pending Appeal at 1. Mr. Turner poses no such risks because he suffers from debilitating afflictions. He needs assistance to perform even the most basic activities of daily living, and his condition is only deteriorating. *See, e.g.,* Ex. 4. Several of Mr. Turner's conditions, including his post traumatic stress disorder, at times prevent him from wanting or being able to leave his home at all. *Id.* When Mr. Turner leaves his home, he must use a walker to move, and even then he must stop after a short distance or risk the onset shortness of breath or dizziness. *Id.*

Mr. Turner also poses no risk of flight because he has substantial ties to the area. He receives ongoing medical treatment from the Veterans Affairs neurology clinic in Washington, DC, and he and his wife reside in nearby Clinton, Maryland.

Furthermore, he is not a threat to the community. He was convicted of non-violent offenses and has no relevant criminal history.

Accordingly, there is no dispute that Mr. Turner poses no risk of flight or danger to the community and that Mr. Turner meets the requirements of 18 U.S.C. § 3143(b)(1)(A).

B.      This Appeal Raises a Substantial Question Likely to Result in a Sentence That Does Not Include a Term Of Imprisonment

Mr. Turner, through undersigned counsel, certifies that this appeal is taken in good faith and not for purposes of delay. *See* 18 U.S.C. § 3143(b)(1)(B). The government has stated that it does not contend otherwise. *See* Opp. to Mot. for Release Pending Appeal at 1. The only issue in dispute relevant to the relief sought is whether the reasonableness of Mr. Turner's sentence poses a "close question or one that very well could be decided the other way." *Perholtz*, 836 F.2d at 556. Mr. Turner respectfully submits that the issue of the reasonableness of his sentence to imprisonment, in light of his medical condition, is, at the very least, a "close" question sufficient to warrant release pending appeal.[7]

Both the Sentencing Reform Act and the Sentencing Guidelines contemplate the possibility of home detention in lieu of imprisonment for defendants in particularly poor physical condition. In this regard, the Sentencing Reform Act explicitly requires courts to consider a defendant's medical care when imposing a sentence:

> The court <u>shall</u> impose a sentence sufficient, <u>but not greater than necessary</u>, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
>
> (2) the need for the sentence imposed—
>
> (D) to provide the defendant with needed . . . medical care . . . <u>in the most effective manner</u>;[8]

Furthermore, the Sentencing Guidelines' policy statements recognize that the imposition of home detention may be desirable for defendants who, like Mr. Turner, are infirm:

---

[7] Sentencing decisions are subject to review under a "reasonableness" standard. *United States v. Edwards*, 496 F.3d 677, 681 (D.C. Cir. 2007) (citing *United States v. Booker*, 543 U.S. 220, 262 (2005)). District courts must take account of the Sentencing Guidelines and other sentencing goals identified in the Sentencing Reform Act. *Id.* A sentencing court acts unreasonably if it commits legal error in the process of taking the Guidelines or other factors into account, or if the sentence rests on a finding of fact that is clearly erroneous. *Id.*

[8] 18 U.S.C. § 3553(a)(2)(D) (emphasis added).

> § 5H1.1 Age
>
> Age may be a reason to impose a sentence below the applicable guideline range when the defendant is elderly and infirm and where a form of punishment such as home confinement might be equally efficient as and less costly than incarceration.[9]
>
> * * *
>
> § 5H1.4 Physical Condition
>
> [A]n extraordinary physical impairment may be a reason to impose a sentence below the guideline range; e.g., in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment.[10]

Mr. Turner respectfully submits that whether his condition is severe enough to warrant home detention is, at a minimum, a close one that could be decided in his favor. Letters provided by Doctors Balish, Pironti, and Messey demonstrate that certain aspects of Mr. Turner's condition are not under control by medication -- to the contrary, he requires further evaluation and, even with respect to those ailments that have been adequately diagnosed, medication has not fully stabilized Mr. Turner's health. *See United States v. Crumbliss*, 58 Fed. Appx. 577, 581 (4th Cir. 2003) (per curium) (unpublished) (affirming district court's imposition of home detention where defendant's "condition was not stabilized and the best method of treatment had not yet been determined."). Even if all of Mr. Turner's multiple symptoms had been diagnosed -- which the record demonstrates is not the case -- disrupting Mr. Turner's medical treatment by removing him from the care of his current physicians would almost certainly result in his deteriorating conditions no longer being "under control." *See* Exs. 4-6.

Mr. Turner respectfully submits that the appellate decisions this Court considered in reaching its sentence do not support imprisonment here. *United States v. Dyce* is illustrative.

---

[9] U.S.S.G. § 5H1.1.

[10] U.S.S.G. § 5H1.4; *see also* U.S.S.G. § 5F1.2 ("Home detention may be imposed as a condition of probation or supervised release, but only as a substitute for imprisonment.")

9

There, the Court of Appeals considered the propriety of a downward departure based upon defendant's family circumstances. 91 F.3d 1462 (D.C. Cir. 1996). The court vacated the sentence and directed the district court to explain the basis for departure. *Id.* at 1471. On remand, the district court granted defendant's motion for a downward departure under U.S.S.G. §5H1.4, recognizing that defendant's need for "regular medical care" as a result of stroke suffered after her original sentencing justified probation. 975 F. Supp. 17, 22 (D.D.C. 1997). The district court explained that defendant's "complicated regime of medication and medical treatment can best be managed under controlled conditions at home, [w]hile prison could endanger her and would be exceptionally costly." The same reasoning applies to Mr. Turner's situation. Other cases considered did not concern medical conditions of the severity faced by Mr. Turner or reflected concerns with home detention that would not be present here. *See United States v. Brooke*, 308 F.3d 17, 20-21 (D.C. Cir. 2002) (swollen knee, arthritis, respiratory problems and chest pains; affirming district court's refusal to impose home detention in part because defendant had a history of drug dealing from his home); *United States v. Mason*, 966 F.2d 1488, 1498 (D.C. Cir. 1992) (gunshot wound from which defendant had fully recovered); *United States v. Adonis*, 891 F.2d 300, 303 (D.C. Cir. 1989) (diminished mental capacity; remanding for resentencing where district court failed to adequately explain its downward departure).

Furthermore, in considering whether home detention is more appropriate than imprisonment, the ability of the Bureau of Prisons to treat Mr. Turner is not dispositive. The Sentencing Reform Act requires a sentence that considers "the most effective manner" of medical care. 18 U.S.C. § 3553(a)(2)(D). Sections 5H1.1 and 5H1.4 of the Sentencing Guidelines advise that courts should consider efficiency and cost, not merely the ability of the Bureau of Prisons to care for inmates. *See United States v. Jimenez*, 212 F. Supp. 2d 214, 217 (S.D.N.Y. 2002) ("Where

an extremely infirm defendant is so incapacitated and deterrence of recidivism does not justify the expense of extended incarceration, some lesser degree of punishment is permissible, and indeed specifically authorized, by the Sentencing Commission."). Here, home detention is more appropriate because Mr. Turner's current physicians are in a better position to care for Mr. Turner. This is particularly true given the posture of these proceedings -- if ordered to report to FCI Butner pending appeal, Mr. Turner's medical care will shift to a new set of providers, even though, should Mr. Turner prevail on appeal, his care would revert back to his current physicians a few months later. It is both more efficient and less costly to the government overall to continue Mr. Turner's treatment with his current medical providers, in an outpatient setting, rather than to disrupt that treatment and start treatment with an entirely new set of providers in a situation where he is likely to require continuous care in a medical facility.

Indeed, courts have upheld downward departures for defendants suffering from conditions similar to those suffered by Mr. Turner. *See, e.g., United States v. Rioux*, 97 F.3d 648, 663 (2d Cir. 1996) (affirming downward departure on the basis of defendant's diseased kidney, which was stable, because defendant required regular blood tests and medicine); *United States v. McKelvey*, 7 F.3d 236, 1993 WL 339704, at *9 (6th Cir. Sept. 1, 1993) (unpublished) (affirming downward departure on the basis of age and physical condition where defendant was fifty-six and suffered from hypertension and vascular insufficiency that increased risk of transient ischemic attacks, which could lead to a full stroke); *United States v. Greenwood*, 928 F.2d 645 (4th Cir. 1991) (affirming imposition of probation for defendant whose legs were amputated because defendant required treatment at a Veterans Administration Hospital, which incarceration would impair).

The appropriateness of home detention is reinforced when considered in connection with the issue of whether Mr. Turner should have been sentenced using the 2000 Sentencing Guidelines

Manual, the edition in effect at the time of the last substantive act of the conspiracy of which he was convicted. Mr. Turner intends to appeal this Court's calculation of his sentence using the 2006 Sentencing Guidelines because the use of that guideline edition, when the conspiracy had ended years earlier, impermissibly subjected him to an *ex post facto* law.[11] *See Grunewald v. United States*, 353 U.S. 391, 405-406 (1957) (holding acts of concealment do not extend the duration of a conspiracy); U.S. Const. art. I, § 9; *United States v. Gaviria*, 116 F.3d 1498, 1513-14 (D.C. Cir. 1997). For the purpose of this motion, the Court's use of the 2006 Guidelines is significant because the potential shorter sentence range Mr. Turner would face with the use of the 2000 Guidelines highlights the unreasonableness of imprisonment, which would require him to seek medical treatment from a minimum of two different sets of physicians -- his current physicians, then Bureau of Prisons staff, then back to his current physicians -- within a span of potentially less than two years. *See* 18 U.S.C. § 3553(a)(2)(D) ("The court, in determining the sentence to be imposed, shall consider the need for the sentence imposed to provide the defendant with needed . . . medical care . . . <u>in the most effective manner</u>.") (emphasis added).

Mr. Turner's co-defendant, LaTanya Andrews, raised the *ex post facto* issue as the sole basis of her motion for release pending appeal before the Court of Appeals. *See United States v. Andrews*, No. 07-3024. The Court of Appeals granted Ms. Andrews' application. *See* Order Granting LaTanya Andrews' Application for Release Pending Appeal [Docket Entry #96].

---

[11] Had Mr. Turner been sentenced under the 2000 Guidelines, rather than the 2006 edition, his base offense level would have been four levels less, reducing his guideline sentence range from 33-41 months to 21-27 months.

## **CONCLUSION**

Mr. Turner's application for release pending appeal presents a "close" question and satisfies every requirement of 18 U.S.C. § 3143(b). Accordingly, Mr. Turner respectfully requests that this Court grant his motion, continue his release on the same conditions set by Magistrate Kay's February 9, 2006 and May 18, 2007 Orders [Docket Entries #8 and #98], and stay his sentence until such time as his appeal to the United States Court of Appeals for the District of Columbia Circuit is resolved.

Respectfully submitted,

/s/
Michele J. Woods (D.C. Bar No. 426137)
Arthur Luk (D.C. Bar No. 973787)
ARNOLD & PORTER LLP
555 Twelfth Street, N.W.
Washington, D.C. 20004-1206
(202) 942-5000

*Pro Bono Counsel for Peter R. Turner*
*Appointed by the U.S. Court of Appeals*
*for the District of Columbia Circuit*

## CERTIFICATE OF SERVICE

I certify that on December 6, 2007, by agreement of counsel, the foregoing Motion for Release Pending Appeal was served upon the following by electronic mail:

Daniel A. Petalas, Esq.
Edward Sullivan, Esq.
United States Department of Justice
Public Integrity Section
U.S. Department of Justice
1400 New York Avenue, NW
Bond Building, 12th Floor
Washington, D.C.  20005


_____/s/_____
Arthur Luk