UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| UNITED STATES OF AMERICA | )( | |
|---|---|---|
| | )( | Criminal No. 06-26-01 |
| v. | )( | Judge Kollar-Kotelly |
| | )( | Sentencing: September 7, 2007 |
| PETER TURNER | )( | |

## SECOND UPDATE ON DEFENDANT'S MEDICAL SITUATION

COMES NOW the defendant, Peter Turner, by and through undersigned counsel, and respectfully submits the following information to update the Court on his changing medical situation. Mr. Turner submits that, given his serious medical issues, incapacities, and age, he should be sentenced to home detention in lieu of incarceration. In support of his position, Mr. Turner would show:

1. On July 6, 2007, Mr. Turner filed a Memorandum in Aid of Sentencing. Additionally, on July 13, 2007, Mr. Turner filed a Reply to Government's Response to Defendant's Sentencing Memorandum. Finally, on July 19, 2007, Mr. Turner filed an Update of Defendant's Medical Situation (original update). Through these filings, Mr. Turner has been attempting to keep the Court current on his changing medical situation. Mr. Turner's health has been deteriorating, and his doctors, including several specialists who have been brought in as consults, are in the process of reevaluating his conditions.

2. Mr. Turner was originally up for sentencing on July 23, 2007. However, at the time of sentencing, Mr. Turner had numerous scheduled medical tests and evaluations that had not yet been done. Because of this and because of other concerns regarding Mr. Turner's medical situation and daily functioning, the Court continued the sentencing to September 7, 2007. The Court asked undersigned counsel to submit a further update on Mr. Turner's medical situation by August 31, 2007.

1

      3.      In his original update, Mr. Turner attached a letter from Marshall Balish, M.D., Ph.D. Dr. Balish is Mr. Turner's neurologist at the Veterans Administration Medical Center (VAMC) here in D.C. This letter gave a fairly good overview of Mr. Turner's medical problems. A copy of the letter is being attached to this filing for reference. Attachment, Letter from Marshall Balish, M.D., Ph.D. It should be noted that, in his letter, Dr. Balish stresses that Mr. Turner has "multiple serious problems" and that he "has become increasingly disabled recently." Also, he notes that Mr. Turner has several conditions that are not yet fully diagnosed and that "evaluation of his medical and neurological problems is in progress." Moreover, he concludes by saying that "management of [Mr. Turner's] many medical problems is to sa[y] the least difficult." As stated in his letter, Dr. Balish is available to speak to the Court about Mr. Turner. He can be reached at (202)-745-8144.

      4.      Among other things, Mr. Turner suffers from chronic congestive heart failure, pulmonary problems causing severe breathing difficulties, worsening renal failure, and neurological and rheumatological conditions that are making it increasingly difficult for him to walk, control bodily functions, and care for himself. Additionally, Mr. Turner suffers from Post-Traumatic Stress Disorder and some related emotional/mental health disorders as a result of his experiences in Vietnam. He is also diabetic. Recently, Mr. Turner has been experiencing temporary spells of blindness. It was originally believed that this condition was related to his diabetes. However, it is now suspected that this condition might be related to Mr. Turner's neurological problems, and undersigned counsel has confirmed that Mr. Turner's ophthalmologist (Stacey Ackerman, M.D.) has scheduled Mr. Turner for a neuro-ophthalmologic evaluation at the Wills Eye Hospital in Philadelphia on September 14, 2007. Mr. Turner must be attached to an

oxygen pump at night. Because of his inability to walk, he has been prescribed a motorized wheelchair.[1] Mr. Turner takes 38 different kinds of medication each day. See Attachment, Letter from Marshall Balish, M.D., Ph.D. at 2-3.

     5.     On August 6, 2007, Mr. Turner had a consult with an urologist, Pascal Pironti, M.D. This appointment was in regards to Mr. Turner's worsening renal failure and the apparently related problem of blood now being present in Mr. Turner's urine. It should be noted that Mr. Turner had to be hospitalized from May 29, 2007 to June 5, 2007 because he went into acute renal failure. On August 29, 2007, undersigned counsel spoke with Dr. Pironti. Dr. Pironti explained that he performed several tests on Mr. Turner and that the tests he performed on Mr. Turner's urine raised new concerns about the current functioning of Mr. Turner's kidneys. Accordingly, the doctor has sent samples of Mr. Turner's urine off for additional testing. The doctor has scheduled a follow-up appointment to go over the results of these additional tests with Mr. Turner for September 11, 2007. The doctor believes that Mr. Turner will need to be referred to a nephrologist (an urologist specializing in kidney diseases). Additionally, the doctor is concerned that a kidney biopsy may need to be performed on Mr. Turner. The doctor stresses that, because Mr. Turner has diabetes, his kidney disease is particularly serious. The doctor stated that, for people with kidney disease, acute renal failure comes on much more rapidly for those with diabetes than it does for others. Especially given the fact that acute renal failure can be deadly if not caught early on, Doctor Pironti says that Mr. Turner's kidney disease must be "very closely followed." Doctor Pironti indicated that he is available to talk with the Court regarding Mr. Turner. Doctor Pironti is partially

---

[1] Mr. Turner was fitted for the wheelchair on August 7, 2007, and he is expecting to receive it in the very near future.

3

retried. He only works on Mondays and Tuesdays. He can be reached at work at (856) 817-3000 and at home at (609) 398-7016.

6. On July 25, 2007, Mr. Turner had a consult with a cardiologist, Bruce Kimmel, M.D. This appointment concerned Mr. Turner's worsening congestive heart failure. On August 27, 2007, undersigned counsel spoke with Dr. Kimmel's office.[2] Counsel was informed that, when the doctor saw Mr. Turner on July 25, 2007, he ordered Mr. Turner to undergo a heart monitor evaluation. This evaluation was performed on August 21-22, 2007. Mr. Turner currently has an appointment with Dr. Kimmel for October 14, 2007 to review the results of this evaluation.

7. On July 25, 2007, Mr. Turner had an appointment with Roy Levinson, M.D. This appointment was a follow-up to an earlier appointment. On August 28, 2007, undersigned counsel spoke with Dr. Levinson. The doctor informed counsel that he is treating Mr. Turner for what he called "significant lung disease" and "severe chronic obstructive lung disease." The doctor is currently in the process of developing a modified medication plan to better treat Mr. Turner's pulmonary conditions. Mr. Turner has another follow-up appointment with Dr. Levinson for September 11, 2007.

8. On August 2, 2007, Mr. Turner had an appointment with his neurologist, Dr. Balish, at the VAMC. This appointment concerned Mr. Turner's worsening neurological problems and is part of an on-going evaluation. Unfortunately, Dr. Balish has been on vacation for the last two weeks of August, and undersigned counsel has not been able to speak with him regarding the appointment of August 2, 2007. However, counsel hopes to speak with Dr. Balish before sentencing, and he believes that he will be able to give the Court an update then.

---

[2] Undersigned counsel was unable to speak to the doctor because he is away on vacation until September 4, 2007 Counsel will try to speak to the doctor then, and he hopefully will be able to update the Court at sentencing.

4

9. Edwin Messey, M.D. is Mr. Turner's primary physician. Prior to Mr. Turner's last court appearance, Dr. Messey has scheduled Mr. Turner for an appointment for October 18, 2007. At the time that this appointment was scheduled, it was hoped that the reports from all the various specialists that Mr. Turner is seeing would have become available. The plan is for Dr. Messey to develop a more refined overall strategy for treating Mr. Turner based on the input form the specialists. After the last court appearance, Mr. Turner was able to move his appointment with Dr. Messey up. However, the earliest the appointment could be rescheduled for was September 6, 2007—the day before sentencing. Nevertheless, undersigned counsel was still hoping to speak with Dr. Messey prior to submitting this update. However, counsel has learned that Dr. Messey has recently been hospitalized, and he has not yet been able to speak with him as he had hoped.

10. Mr. Turner is 60 years old. While this may be regarded as still relatively young by many, it should be pointed out that, for black males in the D.C. area, the average life expectancy appears to be somewhere between 57 and 64 years. Compare Jet Magazine Article of 12/22/1997 at http://www.encylopedia.com (57.9 years) with DC Trends: 2007 Statistics on Washington at http://www.prorev.com/dctrends.htm (63.4 years). In small part, this low life expectancy can be attributed to the unusually high homicide rate among young black males in D.C. However, according to studies cited by the Heritage Foundation in 2000, even when the unusually high homicide rate is factored out of the equation, the average life expectancy for black males in D.C. is only raised "from 57 and a half to nearly 61." See Heritage Foundation Article at http://www.heritage.org/Press/NewsReleases/NR050300. Moreover, Mr. Turner has

numerous chronic and systemic medical problems, which is typical for someone who is in the final years of his life.

11. In addition to affecting Mr. Turner's health, his medical conditions also impact his daily functioning. As documented in previous filings, Mr. Turner is incontinent of bowel and bladder, has difficulty dressing and feeding himself, is largely unable to walk, and cannot breathe at night without being attached to an oxygen pump

12. If Mr. Turner is incarcerated, it will mean that the extensive ongoing medical care that he is currently receiving will be completely interrupted. Such loss of continuity of care is a serious deprivation for someone in Mr. Turner's condition. Even if the BOP is capable of providing adequate treatment for Mr. Turner in the long run, it seems very unlikely that it will simply be able to pick right up at the point where his doctors are now. This seems especially true given the complexity of Mr. Turner's overall health situation. It bears repeating at this point that, because of his diabetes, Mr. Turner's kidney disease makes him prone to acute renal failure with an especially rapid onset. Also, it should be pointed that incarceration for someone in Mr. Turner's condition is going to be significantly harder than it would be for someone who is healthier. Moreover, if Mr. Turner is incarcerated, the BOP will have to pay for the cost of his medical treatment and the help he needs with his daily functioning.

13. For someone in Mr. Turner's condition, the Court can depart downwardly under U.S.S.G., Section 5H1.1, which states that "[a]ge may be a reason to impose a sentence below the applicable guideline range when the defendant is elderly and infirm and where a form of punishment such as home confinement might be equally efficient and less costly than incarceration." Additionally, the Court can depart downwardly under U.S.S.G., Section 5H1.4, which states that "an extraordinary physical impairment may be

reason to impose a sentence below the applicable guideline range." This provision then goes on to specifically note that, "in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment."

14. The Court should depart downwardly for Mr. Turner under both Section 5H1.1 ("elderly and infirm") and 5H1.4 (serious physical impairment). See United States v. Greenwood, 928 F.2d 645, 646 (4th Cir. 1991) (5H1.4 departure for Korean War veteran who had both legs amputated below the knees and whose treatment at the VA would be jeopardized if he was incarcerated); United States v. Baron, 914 F.Supp 660, 662-65 (D. Mass. 1995) (where there could be a "rapid deterioration" in defendant's medical condition to a "life-threatening" situation, Court departed under both 5H1.1 and 5H1.4 for elderly defendant suffering from cardiac condition, loss of the pituitary gland, and possible prostrate cancer); United States v. Maltese, 1993 WL 222350 (N.D. Ill. 1993) (both 5H1.1 and 5H1.4 departure for 62-year-old defendant suffering from liver cancer) (not reported in F.Supp.).

15. If the Court is unwilling to depart downwardly all the way to home detention, the Court should at least consider departing downwardly to reduce Mr. Turner's period of incarceration. In doing so, the Court should take into account the fact that incarceration for someone in Mr. Turner's condition is going to be significantly harder than it would be for someone who is healthier. Additionally, a reduced prison sentence, while still sending a strong message to Mr. Turner, would lessen the interruption in his medical care that his incarceration will necessarily cause.

WHEREFORE, the defendant, Peter Turner, updates the Court on his medical situation.

                    Respectfully submitted,

                    /s/
                    Jerry Ray Smith
                    Counsel for Peter Turner
                    717 D Street, N.W.
                    Suite 400
                    Washington, D.C. 20004
                    Phone: (202) 347-6101



**DEPARTMENT OF VETERANS AFFAIRS**
Medical Center
50 Irving Street NW
Washington DC 20422

7/11/07

To Whom It May Concern:

Mr. Peter Turner is followed in the neurology clinic at the Washington VA Medical Center. He is under treatment for multiple serious problems and this is an update to the many letters I have previously written. Mr. Turner has become increasingly disabled recently. He has limited ambulation, an as yet undiagnosed tremor, worsening peripheral neuropathy, worsening renal failure, continued electrolyte abnormalities and he is being worked up now for possible autoimmune disease such as lupus. He is incontinent and needs assistance with his activities of daily living. All of this is on top of the many chronic but serious medical problems that include -

1. He has refractory asthma requiring use of steroids and multiple inhalers - he At times needs to come to the clinic twice a day for treatments of this in addition to home treatments.

2. He has sleep apnea and requires the use of CPAP and oxygen at night. At times his breathing is bad enough to prevent him from leaving his house.

3. He has a history of head trauma and post traumatic stress disorder (PTSD) with resultant chronic headaches and in the past seizures. This interferes with his memory and he is on many medications for this that also may slow down his thinking. The medications include high doses of gabapentin, carbamazepine and Zoloft (sertraline). Again at times the PTSD is severe enough to prevent him from wanting or being able to leave the house.

4. He has congestive heart failure and is on multiple medications for this which also contributes to his difficulty breathing.

5. He has gout and degenerative joint disease and is on medications for this including narcotics (percocet) when the other anti-inflammatory and gout medications do not work.

6. He has diabetes and is on medications for this though it is still not adequately controlled.

7. He has hypertension and is on medications for this.

8. He has elevated cholesterol also requiring medications.

His medical problems are serious and quite limiting. I have appended a list of his medications here:

```
     Active Outpatient Medications                              Status
     ================================================================
 1)  ACETYLCYSTEINE 20% INHL SOLN 30ML TWO MLS BY                ACTIVE
     INHALATION TWICE A DAY
 2)  ALBUTEROL 0.5% INHL SOLN MIX 0.5ML WITH 2.5ML OF            ACTIVE
     WATER FOR INHALATION BY INHALATION TWICE A DAY
     **PHONE IN MAIL REFILLS AT 202 745 4046**
 3)  ALBUTEROL 90/IPRATROP 18MCG 200D PO INHL INHALE TWO         ACTIVE
     PUFFS BY INHALATION EVERY SIX HOURS FOR SHORTNESS
     OF BREATH
 4)  ALENDRONATE 70MG ONCE WEEKLY TAB TAKE ONE TABLET BY         ACTIVE
     MOUTH WEEKLY IN THE MORNING 30 MINUTES BEFORE
     FOOD/DRINK. DO NOT LIE DOWN FOR AT LEAST 30 MINUTES
 5)  ARTIFICIAL TEARS PVA 1.4%/POVIDONE (PF) INSTILL ONE         ACTIVE
     DROP IN BOTH EYES FOUR TIMES A DAY AS NEEDED FOR
     DRY EYES
 6)  BACITRACIN 500/POLYMYXIN 10000U/GM OINT APPLY               ACTIVE
     SPARINGLY TO AFFECTED AREA TWICE A DAY TO RIGHT
     WRIST INJURY
 7)  CALCIUM CARBONATE 650MG (CA 260MG) TAB TAKE ONE             ACTIVE
     TABLET BY MOUTH TWICE A DAY TAKE OTHER MEDICATIONS
     ONE HOUR BEFORE USAGE
 8)  CAPSAICIN 0.075% CREAM APPLY LIBERALLY TO AFFECTED          ACTIVE
     AREA EVERY DAY
 9)  CARBAMAZEPINE 200MG TAB TAKE ONE TABLET BY MOUTH            ACTIVE
     THREE TIMES A DAY
10)  COLCHICINE 0.6MG TAB TAKE ONE TABLET BY MOUTH TWICE A       ACTIVE
     DAY ** FOR GOUT **
11)  DEPEND FITTED BRIEF LARGE USE DAILY AS DIRECTED EVERY       ACTIVE
     DAY **PHONE IN MAIL REFILLS AT 202 745 4046**
12)  DILTIAZEM HCL 120MG SA CAP TAKE ONE CAPSULE BY MOUTH        ACTIVE
     TWICE A DAY FOR HIGH BLOOD PRESSURE **SAME AS
     TIAZAC**
13)  DM 10/GUAIFENESIN 100MG/5ML SYRUP TAKE 2                    ACTIVE
     TEASPOONFULS BY MOUTH EVERY SIX HOURS AS NEEDED **
     FOR COUGH **
14)  DOCUSATE NA 100MG CAP TAKE ONE CAPSULE BY MOUTH EVERY       ACTIVE
     DAY AS A STOOL SOFTENER
15)  FLUNISOLIDE 25MCG 200D NASAL INH SPRAY SPRAY ONE            ACTIVE
     SPRAY IN EACH NOSTRIL TWICE A DAY FOR ALLERGIES
     **PHONE IN MAIL REFILLS AT 202 745 4046**
16)  FUROSEMIDE 80MG TAB TAKE TWO TABLETS BY MOUTH TWICE A       ACTIVE
     DAY ** FOR FLUID **
17)  GAUZE PAD 4IN X 4IN STERILE USE GAUZE TO AFFECTED           ACTIVE
     AREA TWICE A DAY
18)  GLOVE VINYL LARGE PWDR-FREE NONSTERILE USE ONE GLOVE        ACTIVE
     TO CHANGE DRESSING AS NEEDED THREE TIMES A DAY
19)  GLYBURIDE 5MG TAB TAKE TWO TABLETS BY MOUTH IN THE          ACTIVE
     MORNING FOR DIABETES  **PHONE IN MAIL REFILLS AT
     202 745 4046**
20)  INSULIN NPH HUMAN INJECT 50 UNITS UNDER THE SKIN            ACTIVE
     EVERY MORNING AND INJECT 50 UNITS EVERY NIGHT FOR
     DIABETES. **PHONE IN MAIL REFILLS AT 202 745 4046**
21)  LISINOPRIL 40MG TAB TAKE ONE-HALF TABLET BY MOUTH           ACTIVE
     DAILY FOR HIGH BLOOD PRESSURE. **PHONE IN MAIL
     REFILLS AT 202 745 4046**
22)  LUBRICATING (PF) OPH OINT INSTILL A THIN RIBBON INTO        ACTIVE
     THE LOWER EYELID IN EACH EYE AT BEDTIME ** FOR DRY
```

```
         EYES **
23)  METHYL SALICYLATE 15%/MENTHOL 10% CREAM APPLY            ACTIVE
         SPARINGLY TO AFFECTED AREA TWICE A DAY
24)  MULTIVITAMIN/MINERALS THERAPEUT CAP/TAB TAKE ONE         ACTIVE
         TABLET BY MOUTH EVERY DAY
25)  OMEPRAZOLE 20MG EC CAP TAKE TWO CAPSULES BY MOUTH        ACTIVE
         EVERY DAY FOR STOMACH ACID. DO NOT TAKE WITH
         GRAPEFRUIT JUICE
26)  ONE TOUCH ULTRA (GLUCOSE) TEST STRIP 50 USE AS           ACTIVE
         DIRECTED TWICE A DAY (ON INSULIN) **PHONE IN MAIL
         REFILLS AT 202-745-4046**
27)  ORLISTAT 120MG CAP TAKE ONE CAPSULE BY MOUTH THREE       ACTIVE
         TIMES A DAY WITH MEALS AS DIRECTED
28)  OXYCODONE 5MG/APAP 325MG(PERCOCET) TAKE TWO TABLETS      ACTIVE
         BY MOUTH FOUR TIMES A DAY ** FOR PAIN **
29)  POTASSIUM CHLORIDE 20MEQ SA TAB TAKE TWO TABLETS BY      ACTIVE
         MOUTH THREE TIMES A DAY WITH FOOD **PHONE IN MAIL
         REFILLS AT 202-745-4046**
30)  PREDNISONE 10MG TAB TAKE THREE TABLETS BY MOUTH EVERY    ACTIVE
         DAY WITH FOOD **
31)  SERTRALINE HCL 100MG TAB TAKE 1 TABLET(S) BY MOUTH       ACTIVE
         TWICE A DAY
32)  SILDENAFIL CITRATE 100MG TAB TAKE ONE TABLET BY MOUTH    ACTIVE
         1/2 HOUR BEFORE ACTIVITY **DO NOT TAKE WITH
         GRAPEFRUIT JUICE**
33)  SIMETHICONE 80MG CHEW TAB CHEW ONE TABLET BY MOUTH       ACTIVE
         FOUR TIMES A DAY ** FOR GAS **
34)  SYRINGE+NEEDLE(FOR INSULIN)] USE SYRINGE UNDER THE       ACTIVE
         SKIN TWICE A DAY FOR INSULIN INJECTION
35)  TOLNAFTATE 1% TOP PWD SPRINKLE SMALL AMOUNT TO           ACTIVE
         AFFECTED AREA TWICE A DAY  TO GROIN AND FEET
36)  UNDERPAD,BED LARGE USE ONE PAD AS DIRECTED EVERY DAY     ACTIVE
37)  VITAMIN B COMPLEX/VITAMIN C CAP/TAB TAKE ONE TABLET      ACTIVE
         BY MOUTH EVERY DAY
38)  VYTORIN (EZETIMIBE/SIMVASTATIN) 10/80 TAB TAKE ONE       ACTIVE
         TABLET BY MOUTH AT BEDTIME
```

Please let me know if you have any questions. Further evaluation of his medical and neurologic problems is in progress and management of his many medical problems is to sat the least difficult. Thank you.

Sincerely,

*[signature]*

Marshall Balish, MD-PhD
Asst. Chief Neurology
202-745-8144