**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>　　　　　　　　　　　　　　　　　)<br>　　　　Plaintiff, 　　　　　　　　　　)<br>　　　　　　　　　　　　　　　　　)<br>　　　　v. 　　　　　　　　　　　　　) Criminal No. 06-00026 (CKK)<br>　　　　　　　　　　　　　　　　　)<br>PETER R. TURNER, 　　　　　　　　)<br>　　　　　　　　　　　　　　　　　)<br>　　　　Defendant. 　　　　　　　　　)<br>_____) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION FOR RELEASE PENDING APPEAL**

The United States of America, by and through its undersigned counsel, respectfully submits this opposition to defendant Peter R. Turner's motion for release pending the resolution of the appeal of his convictions. As discussed in detail below, defendant's motion, filed pursuant to 18 U.S.C. § 3143(b), rehashes stale arguments previously reviewed and rejected by this Court. These arguments should fare no better than when they were originally raised.

**BACKGROUND**

Over the course of nearly 14 months – from the time of his conviction on July 31, 2006, until the time of his final sentencing hearing on September 7, 2007 – defendant repeatedly submitted medical evidence and legal argument to the Court in an attempt to demonstrate that his age and infirmity warranted a downward departure under sections 5H1.1 and 5H1.4 of the United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines"). Among other things, defendant:

　　(1)　　filed a July 6, 2007, memoranda in aid of sentencing detailing defendant's physical condition and including letters from two separate treating physicians and medical records from a third (see dkt. 101 at Ex. 1-4);

(2) filed a July 13, 2007, reply to the government's sentencing memoranda, again setting forth defendant's physical condition (see dkt. 107);

(3) filed a July 19, 2007, status report which suggested that defendant's medical condition had been "deteriorating recently" (see dkt. 104 at 1). Attached to this report was an updated letter from one of defendant's doctors (id. at Ex. 1); and

(4) filed a second status report, dated August 31, 2007, again suggesting that defendant's health was deteriorating and further attempting to detail defendant's medical condition (see dkt. 104).

In addition to these filings, defendant presented considerable argument to the Court over the course of two sentencing hearings held on July 23, 2007, and September 7, 2007. During both hearings, defense counsel discussed his client's medical condition at considerable length.

With a fulsome record before it, the Court correctly calculated the applicable Sentencing Guidelines range; allowed the parties to argue for a sentence they each deemed appropriate; considered the facts set forth in 18 U.S.C. § 3553(a); and then – making an individualized assessment based on the facts presented – properly denied defendant's request for a downward departures pursuant to U.S.S.G. §§ 5H1.1 and 5H1.4. See Exhibit 1 at 42 (partial transcript of Sept. 7, 2007, hearing).

After settling on an appropriate sentence, the Court also provided a thorough explanation of its decision. While recognizing defendant's chronic health problems, the Court correctly noted that his various medical issues appeared to be under control and that his additional testing did not appear to reveal any new diagnoses. Id. at 40. In addressing whether defendant suffered from "extraordinary physical impairment" for sentencing purposes, the Court discussed the controlling caselaw and properly found that his various conditions, though unfortunate, were neither exceptional nor atypical. Id. at 40-41; see also id. at 42 ("I have to say that I have had other cases

which have had chronic . . . problems very similar to this. People in wheelchairs with additional things that happen in the Bureau of Prisons."). Importantly, the Court further stated:

> I did – it's not a requirement, certainly, in terms of the cases that I could see here, in order to form my decision, I did have probation check with the Special Assistant to the Assistant Director of the Bureau of Prisons Health Services Division in terms of looking at in-patient chronic care beds that would be available, the kinds of treatment that would be available. There are federal medical centers that go up to care level three, and there are medical centers for federal prisons that go up to care level four. Obviously, they would need to take a look at [defendant] and come to their own conclusions about which is the appropriate level. But we did not get any feedback that seemed to indicate that they thought they were not able to actually treat him.

Id. at 41-42.

On appeal, defendant filed a motion for release pending resolution of his appellate claims.[1] Attached to defendant's motion were three letters from doctors that were prepared after defendant was sentenced – the same three letters that are attached to defendant's present motion. See Def. Motion at Exhibits 4-6. Importantly, however, the letters were written by doctors that have been examining defendant for lengthy periods of time prior to sentencing. Much like their predecessors, these three letters set forth defendant's health problems – virtually all of which were either previously disclosed to the Court or which could have been provided to the Court since the examinations appear to have occurred prior to September 7, 2007. E.g., Def. Motion at Ex. 5 (9/18/07 letter from Dr. Pironti) ("Mr. Peter Turner was first seen at this office on August 6, 2007, because of gross hematuria, which he has noted intermittently for several months.") (emphasis added); id. at Ex. 4 (9/26/07 letter from defendant's neurologist, Dr. Balish, setting forth for the

---

[1] The government opposed this motion on November 27, 2007.

third time the various medications that defendant is taking and restating his medical condition); id. at Ex. 6 (one paragraph letter, dated September 26, 2007, from defendant's primary physician, Dr. Messey, setting forth problems previously disclosed to the Court at the time of sentencing (cf. Def. Motion at 3)).

The three letters, taken as a whole, generally restate what has already been presented to the Court on prior occasions. Of greater note is what they do not state. The three letters do not claim that the Bureau of Prisons ("BOP") would provide defendant with inadequate medical treatment or testing. They also do not state that the BOP would be unable to enforce defendant's medication regimen, or that imprisonment would result in defendant's medical condition worsening to a greater degree than if he were subject to home confinement.

The appellate court, on its own motion, ordered an administrative stay of this Court's prior orders dated September 7, 2007, and November 13, 2007. The appellate court emphasized in its order that the "administrative stay should not be construed in any way as a ruling on the merits of [defendant's] motion for release pending appeal filed in [the appellate court]." Id. at 1. Instead, the stay was entered to allow defendant an opportunity to apply to this Court for his release pending appeal, since it was unclear on the record whether this Court was aware of them. See Def. Motion at Ex. 2.

## ARGUMENT

I. **Defendant's Motion Should Be Denied, Because He Has Not Raised A Substantial Question Of Fact Or Law That Would Warrant His Release Pending Appeal**

Defendant's request for release pending appeal is unjustified since he has not raised a substantial question of fact or law likely to result on appeal in a finding of no imprisonment or a

term of imprisonment less than the duration of his appeal.[2] 18 U.S.C. § 3143(b)(1)(B). To determine the substantiality of a question raised on appeal, the standard is whether the question is a "close question or one that could very well be decided the other way." United States v. Perholtz, 835 F.2d 554, 556 (D.C. Cir. 1998) (citation and internal marks omitted). Defendant has fallen well-short of meeting this standard.

Defendant primarily contends in his motion that the Court's decision to reject his request for a downward departure was unreasonable, and that this ruling is the type of "close question" that warrants his release pending appeal. See Def. Motion at 1, 8-12. Defendant specifically claims that the Court erred in exercising its discretion not to depart downward under U.S.S.G. §§ 5H1.1 and 5H1.4 based on defendant's assertion that his age and medical condition warrant such a departure.[3] Id. at 9-10. Defendant is mistaken both legally and factually.

### A. The Court's Decision To Sentence Defendant Within The Guidelines Range Was Neither Unreasonable Nor An Abuse Of Discretion

This Court, as the record makes clear, was well aware of its ability to depart from the Sentencing Guidelines, and it permitted defendant to make numerous filings and present substantial evidence and argument on the issue of his age and medical condition through the

---

[2]    The government does not contend that defendant poses a risk of flight or danger to the community, or that his appeal has been taken for the purpose of delay. See 18 U.S.C. § 3143(b)(1)(A).

[3]    Although defendant cites U.S.S.G. § 5H1.1 as a ground for appealing the reasonableness of the Court's sentence, he offers no substantive argument to support his present motion. Nor could he. It is highly unlikely that defendant will demonstrate on appeal that the denial of this age-related departure was improper. Although older than others who are convicted of federal crimes, defendant, at age 60, if far from being elderly. Nor is his age so advanced that it will likely be found on the merits to constitute the sort of extraordinary circumstance that would require the appellate court to mandate the case with an instruction that the Court grant the requested downward departure.

course of multiple hearings. The Court went far beyond what is legally sufficient by: (1) articulating the correct standard of review and applying the proper procedure; (2) postponing its sentencing determination many months to afford defendant an opportunity to obtain and present the results of additional medical examinations and tests; and (3) making inquiring on its own accord to ensure that defendant could receive adequate medical treatment from the BOP.

The Court's determination that the facts did not warrant exercising its discretion by departing downward will not likely be overturned on appeal. This is particularly true given recent decisions of the United States Supreme Court, including one issued today. On appeal, a panel of the United States Court of Appeals for the District of Columbia Circuit will be limited to determining whether this Court's sentencing decision was reasonable, applying an abuse of discretion standard. See Gall v. United States, — S.Ct. —, No. 2007 WL 4292116 (Dec. 10, 2007) ("the appellate court must review the sentence under an abuse-of-discretion standard"). The fact that the D.C. Circuit "might reasonably [conclude] that a different sentence was appropriate is insufficient to justify reversal of [this] court." Id. As the Supreme Court explained in Gall:

> Practical considerations also underlie this legal principle. The sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual cases. The judge sees and hears the evidence, makes credibility determinations, has full knowledge of the facts and gains insights not conveyed by the record.

Id.

Further undermining defendant's "close question" argument is the distinct possibility that the D.C. Circuit will follow the lead of several other circuits by adopting a "presumptively reasonable" standard for sentences that fall within the applicable Guidelines range. See id.; see also Rita v. United States, 127 S. Ct. 2456, 2463 (2007). Such a standard would conform to the

appellate court's general refusal to overturn decisions not to depart downward so long as the district court was aware of its discretion and authority to do so.  See United States v. Beckham, 968 F.2d 47, 53 (D.C. Cir. 1992).

When applying the governing standards here, it is apparent that the Court was well within its discretion to reject defendant's request for a downward departure.  The Court's reasoned decision does not raise a close question of fact or law – even if one assumes that defendant is fully complying with his doctors' orders and even if his doctors' letters are accepted on their face.

As the Court knows, a departure request pursuant to U.S.S.G. § 5H1.4 is rarely granted. United States v. Brooke, 308 F. 3d 17, 19 (D.C. Cir. 2002) (a defendant's age and physical condition are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range); Koon v. United States, 518 U.S. 81, 95-96 (1996) (departures based on a physical condition is a discouraged ground on which to depart and should be limited to exceptional circumstances).  Sentencing below the Guidelines range because of a physical condition requires the defendant to have an "extraordinary physical impairment," not that the defendant be merely infirm.  Brooke, 308 F.3d at 21.  After considering several factors, the Court properly found that defendant's ailments did not meet this requirement.

First, in determining whether an extraordinary impairment was shown, the Court was well within its rights to consider the BOP's ability to accommodate defendant's condition.  See, e.g., United States v. Krilich, 257 F.3d 689, 693 (7th Cir. 2001) (none of multiple medical conditions alone or in combination justified departure because the BOP could treat the defendant's conditions); United States v. Altman, 48 F.3d 96, 104 (2d Cir. 1995) (holding that "extraordinary physical impairment" required for downward departure not satisfied where BOP is able to

accommodate medical condition); United States v. Coughlin, 500 F.3d 813, 818-19 (8th Cir. 2007) (district court clearly erred where, among other reasons, BOP had capability to provide any necessary medical care or medication); United States v. Washington, 467 F.3d 1122, 1124-25 (8th Cir. 2006) (BOP verified that it could manage the defendant's severe medical condition, and court found that BOP could ensure that the defendant was compliance with the doctor's orders).[4]

Because prisoners with medical problems are constitutionally entitled to receive medical treatment, the BOP has the medical personnel and facilities required to furnish defendants with the care and treatment they need. Estelle v. Gamble, 429 U.S. 97, 103 (1976) (prisoners constitutionally entitled to appropriate medical care and treatment). The Court determined on its own accord that adequate medical care will be available to defendant. The BOP also has the ability to place defendant in a different federal medical center if there is a subsequent reason to increase his level of care.

Second, courts have often denied downward departures for serious, chronic, life-threatening diseases like those from which defendant claims to suffer, finding that they were not extraordinary for sentencing purposes. Those findings have been routinely upheld on appeal, just as downward departures premised on such conditions have been reversed on appeal. E.g., Coughlin, 500 F.3d at 816, 818-19 (reversing downward departure for obese defendant who was

---

[4]   See also, e.g., United States v. Hilton, 946 F.2d 955, 960 (1st Cir. 1991) (severe skin condition requiring close medical supervision and frequent surgery insufficient to support downward departure because inmate's medical needs were fully served by prison system); United States v. Jauregui-Perez, 376 F. Supp.2d 1060, 1062 (D.N.M. 2004) (denying downward departure motion where defendant suffered from congestive heart failure that could be adequately treated by the BOP); United States v. Bates, No. 05-81027, 2007 WL 2780551 at *10 (E.D. Mich. Sept. 20, 2007) (defendant failed to show that the BOP could not accommodate defendant's medical conditions, which appeared to be under control through medication).

8

routinely taking 13 different medications, had survived sudden cardiac death, had an implantable cardioverter defibrillator, and suffered from numerous other ailments, including "cardiac arrhythmia, severe pulmonary hypertension, double vessel coronary atherosclerosis, type II diabetes, gout, ethmoid sinusitis, obesity, high blood pressure, severe allergies, and back and knee pain. . . . [and] severe obstructive sleep apnea, which necessitates the use of a continuous positive airway pressure machine at night to prevent a dangerous drop in [the defendant's] oxygen levels"); Krilich, 257 F.3d at 692 (reversing departure based on chronic cardiovascular disease, chronic peripheral vascular disease with hypertension, obstructive pulmonary disease, and lower back pain with lumbar and lumbosacral origin); United States v. LeBlanc, 24 F.3d 340, 348-49 (1st Cir. 1994) (downward departure not warranted where defendant, who had suffered two heart attacks and suffered from coronary artery disease, could be treated with medication); United States v. Carey, 895 F.2d 318 (7th Cir. 1990) (fact that defendant is afflicted with cancer, without more, is not an extraordinary physical impairment).[5]

---

[5] See also United States v. Guajardo, 950 F.2d 203, 208 (5th Cir.) (departure unwarranted for defendant who suffered from "cancer in remission, high blood pressure, a fused right ankle, an amputated left leg, and drug dependency."), cert. denied, 503 U.S. 1009 (1991); United States v. Winters, 105 F.3d 200, 208 (5th Cir. 1997) (defendant's chronic inflammation of multiple organs did not constitute a physical impairment warranting a departure); Washington, 467 F.3d at 1123-25 (affirming denial of downward departure motion where defendant weighed approximately 800 pounds at time of arrest, suffered from hypertension, seizures, migraine headaches, and mild mental retardation); United States v. Goff, 6 F.3d 363, 366 (6th Cir. 1993) (wheelchair bound quadriplegic not entitled to departure); accord, e.g., Bates, 2007 WL 2780551 at *10 (no extraordinary physical impairment where defendant was taking 12 medications, was in the care of seven doctors, and was being treated for an enlarged heart, prostate cancer, diabetes, acid reflux, high blood pressure, and arthritis); United States v. Lewis, Cr. No. 00-66-02, 2003 WL 22232858 (E.D. Pa. July 25, 2003) (unpublished) (no departure for defendant receiving frequent renal dialysis for end-stage kidney disease and who also suffered from HIV, Hepatitis C, hypertension, and chronic arthritis).

**B.      Defendant's Post-Sentencing Evidence Raises No New Factual Issues**

The three letters causing the administrative stay do not disturb the reasonableness of defendant's sentence since they address issues that have been fully vetted by the Court. Defendant's doctors, as they have said in the past, are claiming that defendant has chronic ailments, that his conditions are not improving, and that at some point in the future he may require additional medical tests. These are the same contentions previously litigated by defendant during the Court's multiple, prior hearings.

Moreover, even assuming these three letters somehow plow new ground, they all fail to address key questions. Defendant's doctors have not suggested that they have personal knowledge or expertise regarding prison conditions, that they have visited a BOP facility, that they are in a better position to care for defendant, that their care in a home confinement setting would be less expensive or more efficient than the medical treatment provided by the BOP, or that they know where defendant would be housed within BOP if his medical conditions should improve or worsen. Nor have defendant's doctors asserted that BOP is unable to provide defendant with any medication or other necessary medical care. The record – omitting conjecture and assumptions such as cost of care and government efficiencies (see Def. Motion at 11) – does not show that defendant's condition will deteriorate absent home confinement or that he requires special care that cannot be accommodated by the BOP.

Defendant, in his motion, makes no attempt to address this omission, either. Instead, he merely states that "the ability of the Bureau of Prisons to treat Mr. Turner is not dispositive," see Def. Motion at 10, and he further suggests that the BOP is somehow incapable of providing "close, continuous medical supervision" like that which he presently receives. Id. at 4. The latter

10

proposition is unsupported, while the former does nothing to create a close question of fact or law warranting defendant's release pending appeal.

## II.     The Court's Sentence Was Also Reasonable Under 18 U.S.C. § 3553(a)

In addition to the fact that defendant's age and medical situation does not fall outside the heartland of challenges from which inmates often suffer, sentencing him to a term of incarceration was consistent with the Guidelines and was reasonable under the sentencing factors outlined at 18 U.S.C. § 3553(a).  Specifically, a term of incarceration rather than home detention reflected the seriousness of the offense, promoted respect for the law, and provided just punishment for his conduct.  It served the twin goals of deterrence and consistency with the sentence of his co-conspirator, Latanya Andrews, and is not likely to be overturned on appeal.

The Court, as a final matter, should also pay no heed to defendant's attempt to relitigate a separate sentencing issue under the guise of his medical condition claim.  Defendant specifically suggests that this Court improperly relied on the 2006 edition of the Sentencing Guidelines instead of the 2000 edition to calculate his advisory sentencing range, which defendant maintains violated his rights under the ex post facto clause.[6]  See Def. Motion at 11-12.  This Court applied the correct Sentencing Guidelines, because defendant was charged and convicted of continuing

---

[6] Defendant further suggests that his request for release pending appeal should be granted because his co-defendant, LaTanya Andrews, filed a similar, successful motion before the D.C. Circuit.  Def. Motion at 12.  The appellate court's ruling on Andrews' motion is readily distinguishable, however.  In sentencing Andrews under the 2006 edition of the Guidelines, this Court departed downward based on its determination that Andrews was less culpable than defendant.  As such, Andrews could assert on appeal a colorable claim that this Court would depart the same number of levels under the 2000 edition, which could result in a Zone B sentence and the possibility of home detention.  Defendant, however, is unable to make even a colorable claim of a reduction outside Zone D if the 2000 edition were applied.  The appellate court's decision to grant Andrews' motion for release pending appeal is therefore irrelevant to the determination of defendant's present motion.

conspiracy. Although the government would be pleased to offer separate briefing on this issue to explain the absence of a substantial legal question, such briefing is ultimately unnecessary since defendant also cannot demonstrate that his alternative sentencing calculus would likely result in no imprisonment or a period of imprisonment less than the probable duration of his appeal. 18 U.S.C. § 3143(b)(1)(B)(iii)-(iv).

## CONCLUSION

Defendant cannot demonstrate a reasonable likelihood that the issue he identifies would constitute reversible error on the merits or that he would likely receive a sentence that would not include a period of imprisonment shorter than the likely duration of his appeal. His motion for release pending the appellate court's resolution of his appeal should be denied.

Dated: December 10, 2007                             Respectfully submitted,

                                                                                    WILLIAM M. WELCH II
Chief, Public Integrity Section

s/Edward P. Sullivan
DANIEL A. PETALAS
ANN C. BRICKLEY
EDWARD P. SULLIVAN
Trial Attorneys
Public Integrity Section
Criminal Division
United States Department of Justice
1400 New York Avenue, NW
Washington, D.C. 20530
Tel: 202-514-1412
Fax: 202-514-3003

**CERTIFICATE OF SERVICE**

      The undersigned counsel for the government hereby certifies that he caused a true and correct copy of the foregoing to be served upon the following counsel of record by electronic mail through the Court's electronic case filing system this 10th day of December, 2007:

Michele J. Woods, Esq.
Arthur Luk, Esq.
Arnold & Porter
555 Twelfth Street NW
Washington, DC 20004-1206
*Counsel for Peter R. Turner*

                                                s/Edward P. Sullivan
                                                Edward P. Sullivan
                                                Trial Attorney