UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,   ) | |
| ) | |
| Plaintiff,   ) | |
| ) | Criminal No. 06-26-01 |
| v.   ) | Judge Kollar-Kotelly |
| ) | |
| PETER R. TURNER,   ) | |
| ) | |
| Defendant.   ) | |

**REPLY IN FURTHER SUPPORT OF
PETER R. TURNER'S MOTION FOR RELEASE PENDING APPEAL**

Defendant Peter R. Turner, by and through undersigned counsel, respectfully submits this reply in further support of his motion for release pending appeal pursuant to 18 U.S.C. § 3143(b). As explained in Mr. Turner's opening submission, his sentence to a term of imprisonment, rather than to an equivalent term of home detention, was unreasonable in light of the severe afflictions from which he suffers. The Sentencing Reform Act directs judges to consider the provision of needed medical service in the "most effective manner," 18 U.S.C. § 3553(a)(2)(D), a goal better achieved through home detention. Furthermore, the Sentencing Guidelines recognize that home detention is appropriate for defendants who are physically impaired, particularly where, as here, home detention is at least as efficient as imprisonment and less costly. *See* U.S.S.G. §§ 5H1.1, 5H1.4. Since the issue of whether Mr. Turner should have been sentenced to home detention poses at a minimum the close question necessary for release pending appeal,[1] Mr. Turner should be allowed to remain on release, so that he may continue to seek treatment from physicians familiar with his complex medical condition.

---

[1] The Government "does not contend that Turner poses a risk of flight or danger to the community, or that his appeal has been taken for the purpose of delay." *See* Opp. at 5, n.2. Thus there is no issue that Mr. Turner meets the statutory requirements of 18 U.S.C. § 3143(b)(1)(A) and the first prong of 18 U.S.C. § 3143(b)(1)(B).

The Government's Opposition ("Opp.") offers little to refute the facts relevant to Mr. Turner's motion. The Government does not:

- Dispute that Mr. Turner suffers from a myriad of serious afflictions that severely limit his ability to perform even the most basic functions of daily living for himself, that his condition is deteriorating, or that he requires continuous medical care;[2]

- Present any evidence that Mr. Turner's conditions have been diagnosed completely or are capable of being controlled fully through medication;[3]

- Explain how incarceration is the "the most effective manner" for Mr. Turner to receive needed medical care, *see* 18 U.S.C. § 3553(a)(2)(D), or why home detention is not, in light of Mr. Turner's extensive medical needs, as efficient as incarceration, *see* U.S.S.G. §§ 5H1.1, 5H1.4.[4]

The Government instead relies upon several arguments that fail to withstand scrutiny.

First, as an initial matter, the Government conflates the standard applicable to this motion with the standard governing the merits of Mr. Turner's appeal. *See* Opp. at 6-7. The standard "is not whether the Court believes the defendant has shown a likelihood of success on the merits of the appeal; rather, it is only whether defendant a 'close' question or one that could be decided the other way." *United States v. Quinn*, 416 F. Supp. 2d. 133, 136 (D.D.C. 2006); *see also* Mot. at 6-7.[5]

---

[2] *But see* Mot. at 4.

[3] *But see* Mot. at 4-5.

[4] *But see* Mot. at 10-11. The Government's contention that U.S.S.G. 5H1.1 is inapplicable, Opp. at 5, n.3, is wholly without merit. Courts have or granted downward departures under Section 5H1.1 for defendants *younger* than Mr. Turner. *See, e.g., United States v. McKelvey,* 7 F.3d 236, 1993 WL 339704, at *9 (6th Cir. Sept. 1, 1993) (unpublished) (56 year-old defendant).

[5] The Government invokes the Supreme Court's opinion in *Gall v. United States*, but that decision does not foreclose the relief sought. *Gall* reiterates that an appellate court must ensure that a district court does not commit procedural error by "failing to consider the § 3553(a) factors" or by "selecting a sentence based on clearly erroneous facts." --- S. Ct. ---, 2007 WL 4292116 (Dec. 10, 2007) (reinstating district court's imposition of a sentence of 36 months probation, a departure from a comparable term of imprisonment). Furthermore, *Gall* explains that a sentencing judge considering the § 3553(a) factors "may not presume that the Guideline range is reasonable. He must make an individualized assessment based on the facts presented." *Id.*

Even before the Supreme Court decided *Booker*, the District of Columbia Circuit recognized that, contrary to the Government's suggestion (Opp. at 6-7), refusals to exercise discretion to depart "based on a clearly erroneous factual finding that a circumstance warranting departure is absent" are subject to appellate review. *United States v. Brooke*, 308 F.3d 17, 20 (D.C. Cir. 2002).

Courts applying this standard have granted motions pending appeal even where those courts stood by decisions challenged by defendants on appeal. *Id.*

Second, the Government mistakenly contends that the September letters from Mr. Turner's doctors do not raise new factual issues. Opp. at 10. But Dr. Balish's September 26, 2007 letter reflects that Mr. Turner's condition is deteriorating -- not only is Mr. Turner not improving, his known ailments are getting progressively worse. *See* Mot. Ex. 4. The Government's contention is belied further by a comparison of Dr. Balish's September 26, 2007 letter with his July 11, 2007 letter, which reveals, among other things, that (1) even more testing is required to diagnose fully Mr. Turner's condition, and (2) Mr. Turner's current regimen of medication is not controlling all of his ailments:

| **September 26, 2007** | **July 11, 2007** |
|---|---|
| "Further evaluation including CAT scans of his chest and MRI of the brain and a stress test (to assess his chest pain) are required to further assess him for these serious medical conditions." | No corresponding entry. |
| "**He has a progressive neurologic syndrome with tremor and myoclonus and is more and more impaired.** He needs further evaluation for this including CT of the chest abdomen and pelvis and MRI of the brain." | "He has . . . an as of yet undiagnosed tremor [and] worsening peripheral neuropathy." |
| "He has diabetes and is on medications for this though it is still not adequately controlled. **This has caused damage to his peripheral nervous system and likely kidneys as well.**" | "He has diabetes and is on medications for this though it is still not adequately controlled." |

*See* Mot. Ex. 4 (emphasis added); *see also* Mot. at 4-6. Doctors Pironti and Messey provide additional support for these concerns. *See* Mot. Ex. 5 (noting Mr. Turner's diabetes "has been difficult to control, despite insulin" and that "the patient requires close medical supervision without which he could continue to deteriorate rapidly") (emphasis added); Ex. 6 (noting Mr. Turner

3

probably will need a kidney biopsy and that "he needs continuous medical care"). These facts contradict the Government's assertion that the afflictions from which Mr. Turner suffers "have been fully vetted by the Court" (Opp. at 10) and demonstrate instead the severity and uncertainty of Mr. Turner's condition.

The Government's observations that Mr. Turner raised the issue of his health before sentencing (Opp. at 1-2) and that Mr. Turner remains under the same care of physicians who have been treating him since before sentencing (Opp. at 3) do not suggest a different result. To the contrary, these facts reinforce the conclusion that Mr. Turner's ailments are ongoing and have not responded fully to treatment. Doctors who are very familiar with Mr. Turner's condition have not yet been able to diagnose all of his evolving symptoms, and some of those afflictions that are known remain poorly controlled by medicine, resulting in additional damage. *See* Mot. Exs. 4-6.

Third, the cases the Government relies upon to argue that Mr. Turner's afflictions are not extraordinary within the contemplation of the relevant Sentencing Guidelines provisions are inapposite. Opp. at 8-9. In support of its argument, the Government cites cases that concern defendants whose conditions pale in comparison to that of Mr. Turner. In *United States v. Krilich*, for example, the Seventh Circuit held that chronic cardiovascular disease, chronic peripheral pulmonary disease, and lower back pain did not constitute extraordinary physical impairment within the ambit of U.S.S.G. § 5H1.4. 257 F.3d 689, 693 (7th Cir. 2001). Like Mr. Krilich, Mr. Turner's heart is ailing and he suffers pain as a result of degenerative joint disease. But Mr. Turner also suffers from additional debilitating conditions, including post-traumatic stress disorder and worsening renal failure. *See, e.g.,* Mot. Ex. 4. As a result of these maladies, Mr. Turner cannot perform the basic tasks of daily living without assistance, a fact not present in *Krilich*. In addition, Mr. Turner suffers from as of yet undiagnosed conditions, including potential neurological

4

problems that manifest themselves in spells of blindness and a possible autoimmune disease such as lupus.[6] *See id*. These conditions require Mr. Turner to seek ongoing attention from an array of specialists. *See, e.g.,* Mot. Ex. 3. Thus, while the Bureau of Prisons could administer Mr. Krilich's medication without concern that the regimen might change, Mr. Turner's physicians have yet to reach the complete understanding of his condition necessary to prescribe a definite course of treatment.

Similarly, in *United States v. LeBlanc*, the First Circuit held that defendant's heart condition was not an extraordinary physical impairment within the meaning of U.S.S.G. § 5H1.4 because LeBlanc's own doctors stated that LeBlanc's heart condition could be treated with medicine. 24 F.3d 340, 348 (1st Cir. 1994); *see also United States v. Altman,* 48 F.3d 96, 104 (2d. Cir. 1995) (holding a departure under U.S.S.G. § 5H1.4 was unavailable because "the health problems cited by the defendant simply need monitoring.").[7] Mr. Turner's doctors, however, indicate that some of his many ailments have not been brought under control. *See* Mot. Exs. 4-6. Mr. Turner's doctors confirm that his condition is declining, *see* Mot. Ex. 4, and that he "requires close medical supervision without which he could continue to deteriorate rapidly." Mot. Ex. 5.[8]

---

[6] *United States v. Coughlin*, also cited by the Government (Opp. at 8-9), is similarly distinguishable. 500 F.3d 813 (8th Cir. 2007). There, a divided panel of the Eighth Circuit concluded that a defendant suffering known ailments could be treated by the BOP. *Coughlin* does not indicate that defendant's conditions had not been fully diagnosed. Furthermore, one judge would have affirmed the district court's downward departure, suggesting that the issue presented was a close one. *Id.* at 819-823 (Bye, J., dissenting).

[7] The Government also cites *United States v. Carey*, a Seventh Circuit opinion that vacated a district court's downward departure based on age (62) and physical condition (pituitary condition under treatment by medication; chest cancer not found after exploratory surgery) because the district court did not make particularized findings to support a reduced sentence. 895 F.2d 318, 322-24 (7th Cir. 1990). *Carey* did not reject the possibility of a downward departure based on the defendant's age and condition.

[8] The Government's Opposition collects additional cases purportedly supporting its position in a footnote. *See* Opp. at 9, n.5. These cases each involve defendants with stable conditions, unlike Mr. Turner. For example: *Guajardo* concerned a defendant whose cancer was in remission, 950 F.2d 203, 208 (5th Cir. 1991); *Winters* concerned a defendant whose "condition does not need any particular type of treatment and requires only follow-up observation," 105 F.3d 200, 208 (5th Cir.

5

It is telling that the Government did not even attempt to address the cases cited in Mr. Turner's motion that recognize that downward departures are appropriate in conditions more analogous to his. *See* Mot. at 11.[9]

Fourth, the Government relies heavily on the capabilities of the Bureau of Prisons ("BOP").[10] *See, e.g.,* Opp. at 4. Underlying the premise of this argument, however, is the erroneous assumption that Mr. Turner's medical status is understood and capable of treatment through the administration of a regimen of medicine. *Id.*[11] As explained above, however, Mr. Turner's doctors are struggling to determine fully what ails him and they have not yet determined what medication will control adequately several of his afflictions.[12]

Even assuming the BOP could provide some level of adequate care, the capabilities of the BOP are not, as the Government implies (Opp. at 10), dispositive. *See United States v. Martinez-*

---

1997); *Washington* concerned a defendant who, while obese, "could walk, ride a car, and go about his daily business," 467 F.3d 1122, 1125 (8th Cir. 2006); *Goff* concerned a quadriplegic with no other disclosed ailments, 6 F.3d 363, 365-66 (6th Cir. 1993).

[9] *See also United States v. Moore*, 42 Fed. Appx. 618, 619 (4th Cir. 2002) (per curiam) (unpublished) ("Because Mary Moore's severe physical limitations restrict her mobility and necessitate extensive and individual medical care, we find no error in the court's decision to sentence her to home confinement pursuant to § 5H1.4.").

[10] The Government attempts to make much of the fact that Doctors Balish, Pironti, and Messey do not address the ability of the BOP to treat Mr. Turner. *See, e.g.,* Opp. at 4. This is, of course, because they were not asked to do so. The Government's attempt to read more into what these letters do not say is nothing more than the very "conjecture" that the Government criticizes. Opp. at 10.

[11] The cases cited by the Government, Opp. at 8, n.4, concern defendants whose conditions were fully diagnosed and susceptible to a prescribed course of treatment. *See United States v. Hilton*, 946 F.2d 955, 956 (1st Cir. 1991) (concerning a defendant diagnosed with a condition in which calcium deposits form under the skin, treatable through incision and drainage); *United States v. Bates*, No. 05-81027, 2007 WL 2780551, at *10 (E.D. Mich. Sept. 20, 2007) (concluding "Defendant's conditions are controlled by a regimen of medications"); *United States v. Jauregui-Perez*, 376 F. Supp. 2d 1060, 1061 (D.N.M. 2004) ("physicians are able to control the Defendant's condition with medical supervision and medication").

[12] The Government's position also does not acknowledge that the disruption of his current treatment and the stress of imprisonment may well accelerate Mr. Turner's decline. *See, e.g.,* Mot. Ex. 4, Dr. Balish's September 26, 2007 letter (explaining external stress worsens Mr. Turner's post-traumatic stress disorder and may make it more difficult to manage his medical problems); *see also* Mot. Ex. 5, Dr. Pironti's September 18, 2007 letter ("the patient requires close medical supervision without which he could continue to deteriorate rapidly").

*Guerrero*, 987 F.2d 618, 620 (9th Cir. 1992) (explaining the ability of the BOP to accommodate a disability is a factor, "but it is not the only factor"). In *United States v. Boy*, for example, the Ninth Circuit affirmed a downward departure even though the defendant's presentence report specifically indicated the BOP could address defendant's degenerative hip and knee condition, nonactive tuberculosis, and hyperactive adjustment disorder. 19 F.3d 30, 1994 WL 59781, at *2 (9th Cir. Feb. 25, 1994) (unpublished).

In any event, the BOP is not the source for the "most effective" treatment possible. 18 U.S.C. § 3553(a)(2)(D). No disrespect is intended, but the notion that the BOP, which has no familiarity with Mr. Turner's condition, will somehow provide treatment as effective as the array of specialists with whom Mr. Turner has consulted for months -- including a neurologist, an ophthalmologist, an urologist, a nephrologist, a cardiologist, and a pulmonologist -- is completely unsupported.[13] On the other hand, home detention would be at least as efficient and less costly than imprisonment, *see* U.S.S.G. §§ 5H1.1, 5H1.4, because Mr. Turner would continue to receive medical treatment from providers familiar with his condition, without imposing the costs associated with housing an inmate in a BOP facility and having an entirely new set of providers assess his multiple medical ailments.

---

[13] The Government argues in passing that Mr. Turner's sentencing guideline edition issue, *see* Mot. at 11-12, which the Government does not address on the merits, has no relevance to this motion. *See* Opp. at 11, n.6. But had Mr. Turner's sentence been calculated using the proper guideline edition, he would have been sentenced within a range of 21-27 months. The length of his reduced sentence bears on the effectiveness and efficiency considerations supplied by the Sentencing Reform Act and the Sentencing Guidelines. A term of imprisonment would require Mr. Turner to disrupt his medical treatment twice over the course of potentially less than two years, which is not the most effective or efficient way to provide medical care that is essential for Mr. Turner.

## **CONCLUSION**

Mr. Turner's application for release pending appeal presents a "close" question and satisfies every requirement of 18 U.S.C. § 3143(b).  Accordingly, Mr. Turner respectfully requests that this Court grant his motion, continue his release on the same conditions set by Magistrate Kay's February 9, 2006 and May 18, 2007 Orders [Docket Entries #8 and #98], and stay his sentence until such time as his appeal to the United States Court of Appeals for the District of Columbia Circuit is resolved.

Respectfully submitted,

/s/
Michele J. Woods (D.C. Bar No. 426137)
Arthur Luk (D.C. Bar No. 973787)
ARNOLD & PORTER LLP
555 Twelfth Street, N.W.
Washington, D.C.  20004-1206
(202) 942-5000

*Pro Bono Counsel for Peter R. Turner*
*Appointed by the U.S. Court of Appeals*
*for the District of Columbia Circuit*

**CERTIFICATE OF SERVICE**

I certify that on December 11, 2007, by agreement of counsel, the foregoing Reply in Further Support of Peter R. Turner's Motion for Release Pending Appeal was served upon the following by electronic mail:

    Daniel A. Petalas, Esq.
    Edward Sullivan, Esq.
    United States Department of Justice
    Public Integrity Section
    U.S. Department of Justice
    1400 New York Avenue, NW
    Bond Building, 12th Floor
    Washington, D.C.   20005

                                                    _____/s/_____
                                                    Arthur Luk