UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES,

    Plaintiff,

      v.

PETER R. TURNER,

    Defendant.

Criminal Action No. 06-26-01 (CKK)

# FILED

JAN 2 8 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## MEMORANDUM OPINION
(January 28, 2008)

Currently pending before the Court is Defendant Peter R. Turner's [118] Motion for Release Pending Appeal. Based upon a searching review of Defendant's Motion, the Government's Opposition to Defendant's Motion, Defendant's Reply in Further Support of his Motion, the relevant case law and statutes, and the entire record herein, the Court shall DENY Defendant Turner's [118] Motion for Release Pending Appeal.

## I. BACKGROUND

The following background is discussed extensively in the Court's [64] October 24, 2006 Memorandum Opinion denying Defendant Turner's Motion for Judgment of Acquittal pursuant to Federal Rule of Criminal Procedure 29. Defendant Turner was tried in front of a jury in a four-day trial, followed by a day of jury deliberations. At the conclusion of the Government's case, Defendant Turner moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(a), on which the Court reserved decision and proceeded with trial. Defendant Turner renewed his motion at the close of the case, and the Court again reserved decision on his

motion. At the conclusion of the jury deliberations, Defendant Turner was convicted of one

count of conspiracy and one count of bribery. Thereafter, Defendant Turner filed a Motion for

Judgment of Acquittal. On October 24, 2006, the Court issued a lengthy [64] Memorandum

Opinion, in which the Court assessed the sufficiency of the Government's evidence against

Defendant Turner and concluded that the Government presented ample evidence to sustain

Defendant Turner's convictions for conspiracy and bribery. *See* Mem. Op. at 7-19.

After a number of extensions, Defendant Turner's sentencing began on July 23, 2007.

Prior to that date, the Court received two memoranda in aid of sentencing from the Government,

and two memoranda in aid of sentencing from Defendant Turner, as well as an Update on

Defendant Turner's Medical Situation dated July 19, 2007. Each of Defendant Turner's filings

included medical evidence and legal argument in an attempt to demonstrate that his age and

infirmity warranted a downward departure under sections 5H1.1 and 5H1.4 of the United States

Sentencing Guidelines, and that Defendant Turner should be sentenced to a period of home

detention rather than incarceration. Defendant Turner's July 19, 2007 Update noted that he was

scheduled for a number of medical appointments in the weeks following the July 23, 2007

sentencing, at which additional diagnostic testing would be conducted. As a result, the Court

continued Defendant Turner's sentencing until September 7, 2007 in order to allow him to attend

the additional appointments and obtain an up-to-date evaluation of his medical condition prior to

sentencing.

On August 31, 2007, the Court received a Second Update on Defendant's Medical

Condition, which was accompanied by a July 11, 2007 letter from Defendant Turner's

neurologist at the Department of Veteran Affairs Medical Center. In addition, during the interim

between the sentencings, the Court had the Probation Officer assigned to Defendant Turner's

case communicate with the Special Assistant to the Assistant Director of the BOP Health

Services Division regarding the kinds of medical treatment that would be available to Defendant

Turner within the BOP system. *See* 9/7/07 Sent'g Tr. at 4:24-5:6; 41:15-42:3. After reviewing

all of the then available information regarding Defendant Turner's medical conditions, the BOP

did not indicate any hesitation as to whether it would be able to care for Defendant Turner. *Id.*

On September 7, 2007, the Court sentenced Defendant Turner to two concurrent thirty-

three month terms of imprisonment, followed by two years of supervised release. Turner Mot.

for Release at 2. The Court's Judgment against Defendant Turner, entered September 20, 2007,

ordered him to self-surrender to an institution designated by the Bureau of Prisons ("BOP") on a

date not before October 14, 2007. Judgment, Docket No. 109. Defendant Turner filed a timely

notice of appeal on September 21, 2007. Notice of Appeal, Docket No. [108]. By letter dated

November 7, 2007, the BOP instructed Defendant Turner to report to the Federal Correctional

Institution in Butner, North Carolina ("FCI Butner") on November 29, 2007. Turner Mot. at 2.

On November 13, 2007, the Court entered an Order of Surrender requiring Defendant Turner to

comply with the BOP's reporting instructions. Order of Surrender, Docket No. 112.

On November 21, 2007, Defendant Turner moved the United States Court of Appeals for

the District of Columbia Circuit for release pending appeal. Turner Mot. at 2. On November 28,

2007, the Court of Appeals administratively stayed this Court's sentence and Order to Surrender

in order to give Defendant Turner the opportunity to apply, in the first instance, to this Court for

release pending appeal. USCA 11/28/07 Order, Docket No. [113]. In its Order, the Court of

Appeals queried whether this Court was aware of three letters, all written after Defendant Turner

was sentenced, from three of his treating physicians. *Id.* The Court of Appeals noted that the "letters suggest that [Defendant Turner's] condition may be deteriorating, thus casting doubt on the determination that [his] ailments are 'under control.'" *Id.*

Pursuant to an expedited schedule set by the Court, Defendant Turner filed his Motion for Release Pending Appeal on December 6, 2007, the Government filed its Opposition on December 10, 2007, and Defendant Turner filed his Reply on December 7, 2007. On December 12, 2007, having reviewed those materials, the Court issued an Order noting that, while Defendant Turner's Motion was accompanied by the letters referenced in the Court of Appeal's November 28, 2007 Order, those letters were already roughly two and a half months old. 12/12/07 Order, Docket No. [121]. As such, the Court ordered Defendant Turner to provide updated information regarding the status of his diabetes and the results of the various tests referenced in his Motion and the accompanying doctor's letters. *Id.* Defendant Turner filed his Supplemental Report on his medical condition, as ordered, on January 4, 2008. Defendant Turner's Motion for Release Pending Appeal is now ripe for review.

## II. DISCUSSION

Pursuant to 18 U.S.C. § 1343(b):

a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal . . . [must] be detained, unless the judicial officer finds . . . (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released . . . and (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in (i) reversal, (ii) an order for a new trial, (iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b). The Government does not contend that Defendant Turner is likely to flee

4

or that he poses a danger to the community. Gov't Opp'n at 5 n.2. As such, the Court need only

determine whether Defendant Turner's appeal raises a substantial question of law or fact likely to

result in a reversal, order for new trial, sentence not including a term of imprisonment, or reduced

sentence to a term of imprisonment less than that already served plus the expected duration of the

appeal process. A question raised on appeal is considered "substantial" when it is "a close

question or one that very well could be decided the other way." *United States v. Perholtz*, 826

F.2d 554, 555 (D.C. Cir. 1987) (internal citations and quotation omitted). Moreover, the "law

has shifted from a presumption of release to a presumption of valid conviction." *Id.* (citation

omitted).

 Defendant Turner asserts that he "intends to raise on appeal the issue of whether this

Court's imposition of imprisonment, rather than an equivalent term of home detention, was

reasonable," in light of his medical condition, Turner Mot. at 1, and claims that "the issue of the

reasonableness of his sentence to imprisonment" presents the requisite close question, *id.* at 8.[1]

In particular, Defendant Turner argues that a close question exists as to whether his age and

infirmity are sufficiently severe to warrant a sentence of home detention based on a downward

departure under sections 5H1.1 and 5H1.4 of the Sentencing Guidelines, as well as the

Sentencing Reform Act's requirement that a sentencing court "consider . . . the need for the

---

 [1] Defendant Turner also asserts that he "intends to appeal this Court's calculation of his sentence using the 2006 Sentencing Guidelines," but does not argue that that issue presents a close question. Turner Mot. at 12. Instead, Defendant Turner suggests that the fact that Defendant Turner would face a potentially shorter sentence range under the 2000 Sentencing Guidelines "highlights the unreasonableness of imprisonment, which would require [Defendant Turner] to seek medical treatment from a minimum of two different sets of physicians . . . within a span of potentially less than two years." *Id.* As Defendant Turner does not claim that his argument regarding the Sentencing Guidelines edition used in his sentencing merits release pending appeal, the Court does not address that issue herein.

sentence imposed . . . to provide the defendant with needed . . . medical care . . . in the most

effective manner." *Id.* at 8-9 (quoting 18 U.S.C. § 3553(a)(2)(D) and Sentencing Guidelines

Sections 5H1.1 and 5H1.4). In addition to challenging the reasonableness of Defendant Turner's

sentence to imprisonment based on the information regarding his medical condition available at

the time of his sentencing, Defendant Turner also argues that the three letters written by his

physicians after his sentencing "demonstrate that his condition continues to decline and risks

greater deterioration without close, continuous medical supervision." Turner Mot. at 4. The

Court addresses each of these issues in turn.

A.      *The Reasonableness of Defendant Turner's September 7, 2007 Sentence*

At the outset, the Court notes that, although the standard governing Defendant Turner's

Motion for Release Pending Appeal relates to the existence of a substantial question of law or

fact, the decision as to whether to depart downward in sentencing is within the Court's

discretion. Moreover, as the Supreme Court recently reiterated, the standard on appeal is a

"deferential abuse-of-discretion standard," *Gall v. United States*, --- U.S. ---, 128 S. Ct. 586, 591

(2007), and "appellate review of sentencing decisions is limited to determining whether they are

'reasonable,'" *id.* at 594. Further, under the current standard of appellate review, "[t]he fact that

the appellate court might reasonably have concluded that a different sentence was appropriate is

insufficient to justify reversal of the district court." *Id.* at 597. Therefore, the true issue as to

Defendant Turner's Motion for Release Pending Appeal is whether this Court abused its

discretion in not departing downward and in reviewing the considerations set forth in 18 U.S.C. §

3553(a).

As Defendant Turner points out, at the time of his sentencing, the record before the Court

6

reflected that he suffered from: asthma requiring treatment with steroids and inhalers; sleep

apnea requiring the use of a continuous positive airway pressure ("CPAP") device and oxygen at

night; post-traumatic stress disorder resulting in headaches and seizures; congestive heart failure;

gout and degenerative joint disease occasionally requiring treatment with narcotics; diabetes,

which was treated by medication but not fully controlled; severe peripheral neuropathy; renal

failure; temporary spells of blindness; and a possible autoimmune disease such as lupus.  Turner

Mot. at 3 (citing 8/31/07 Second Update, Docket No. [107]).  Defendant Turner suggests that the

existence of these ailments calls into question the Court's statement during his sentencing that

his medical conditions "appear . . . still to be under control for medication and other means."

9/7/07 Sent'g Tr. at 40:20-22.  However, Defendant Turner takes the Court's statement out of

context, and a review of the transcript of Defendant Turner's sentencing reveals the Court's

awareness of the state of Defendant Turner's medical condition.  *See generally id.*

    The Court specifically addressed most of the ailments to which Defendant Turner points

on the record during his sentencing.  *Id.* at 40:20-41:14.  Further, the Court acknowledged that

Defendant Turner's medical conditions were "serious, severely limiting and permanent, and . . .

more in the context of chronic, they'll be permanent. . . ."  *Id.*  The Court also stated that

Defendant Turner was "not going to stop needing evaluations.  They are obviously monitoring

him, they are going to continue to monitor him, he's going to continue to need to be evaluated."

*Id.* at 8:10-15.  However, the Court noted that while the reason for delaying Defendant Turner's

sentencing "was to take a look to see if there was something that indicated that he required a

more acute care, I haven't received anything back that would seem to indicate it, and more

importantly, acute in the sense that he needs to be hospitalized."  *Id.* at 8:15-22.

7

In addition, the Court recognized that the standard for a downward departure pursuant to Section 5H1.4 was "an extraordinary physical impairment," and discussed the relevant case law. *Id.* at 40:12-19. Based on a complete understanding of Defendant Turner's medical condition as of the time of his sentencing, as well as the fact that the BOP had not indicated an inability to care for Defendant Turner in a Federal Medical Center, the Court found that whether to grant Defendant Turner's request for a downward departure under Section 5H1.4 of the Sentencing Guidelines was "a discretionary issue on the part of the Court," and exercised its discretion not to grant the downward departure. *Id.* at 42:4-12.[2] The Court also specifically considered Defendant Turner's health, among other factors, "in determining a reasonable and appropriate sentence pursuant to 18 U.S.C. 3553(a)." *Id.* at 37:5-8; 38:12-15.

The foregoing establishes that the Court did not abuse its discretion either in determining a reasonable sentence based on the factors enumerated in 18 U.S.C. § 3553(a) or in declining to depart downward pursuant to either Section 5H1.1 or 5H1.4. As such, the Court concludes that no close question exists as to the reasonableness of Defendant Turner's sentence to imprisonment rather than home detention.

B.     *Information Contained in Medical Reports Subsequent to Defendant Turner's Sentencing*

The Court now turns to the second question raised in Defendant Turner's Motion, as well as in the Court of Appeals' November 28, 2007 Order: whether information contained in medical reports issued subsequent to Defendant Turner's September 7, 2007 sentencing calls into

---

[2] The Court also declined to exercise its discretion by granting a downward departure for Defendant Turner's age pursuant to Section 5H1.1 of the Sentencing Guidelines, despite the fact that Defendant Turner's counsel described him as "60 years old going on 90." 9/7/07 Sent'g Tr. at 40:8-12.

question the Court's exercise of discretion in sentencing Defendant Turner to imprisonment rather than home detention.  The Court has thoroughly reviewed the three letters referenced in the Court of Appeals' November 28, 2007 Order, which include: a September 26, 2007 letter from Defendant Turner's Department of Veteran Affairs neurologist, *see* Turner Mot., Ex. 4 (9/26/07 Letter from Dr. Balish); a September 18, 2007 letter from Defendant Turner's urologist, *see id.*, Ex. 5 (9/18/07 Letter from Dr. Pironti); and a September 26, 2007 from Defendant Turner's general physician, *see id.*, Ex. 6 (9/26/07 Letter from Dr. Messey).  In addition, as noted above, following the Court of Appeals' Order, the Court requested updated medical information from Defendant Turner, and has reviewed the materials submitted, which include: a December 12, 2007 letter from his neurologist, *see* Turner Suppl., Ex. 1 (12/12/07 Letter from Dr. Balish); a December 18, 2007 letter from his urologist, *see id.*, Ex. 2 (12/18/07 Letter from Dr. Pironti); a January 3, 2008 letter from his general physician, *see id.*., Ex. 3 (1/3/08 Letter from Dr. Messey); and a number of notices of Defendant Turner's scheduled medical appointments, *see id.*, Ex. 4.

In his Motion, Defendant Turner focuses on a number of issues raised in the various physicians' letters noted above, which he asserts establish the unreasonableness of his sentence to imprisonment.  First, Defendant Turner stresses that he is "under treatment for multiple serious medical problems," and that he "will not improve from these and is progressing in fact."  Turner Mot. at 4 (quoting Ex. 4 (9/26/07 Letter from Dr. Balish)).  However, Defendant Turner's physicians' statements to this effect accord with the Court's understanding at the time of his sentencing that Defendant Turner's medical conditions would not be improving over time.  Significantly, at his sentencing, the Court described Defendant Turner's conditions as "serious, severely limiting and permanent, and . . . more in the context of chronic, they'll be permanent."

9/7/07 Sent'g Tr. at 41:7-10.

Similarly, Defendant Turner notes that his physicians' letters "reflect that [he] requires even more testing before doctors will understand his condition fully." Turner Mot. at 5 (citing Ex. 4 (9/26/07 Letter from Dr. Balish) and Ex. 6 (9/26/07 Letter from Dr. Messey)). Again, the Court specifically addressed this issue during Defendant Turner's sentencing, noting repeatedly that he was "not going to stop needing evaluations. They are obviously monitoring him, they are going to continue to monitor him, and he's going to continue to need to be evaluated." 9/7/07 Sent'g Tr. at 8:10-20. Based on a review of Defendant Turner's most recent medical reports, it is clear that Defendant Turner, in fact, continues to require medical evaluations, particularly with respect to his kidney problems. *See* Turner Suppl., Exs. 1-3. Nevertheless, Defendant Turner's doctors report that they have eliminated a number of potential causes of his kidney problems, *see id.*, Defendant Turner's general physician describes his chronic renal failure as "stable," Turner Suppl., Ex. 3 (1/3/08 Letter from Dr. Messey), and his neurologist describes his renal insufficiency as "mild," Turner Suppl., Ex. 1 (12/12/07 Letter from Dr. Balish) at 7. As was the case as of Defendant Turner's sentencing, his physicians' reports thus indicate that he requires further diagnostic tests and that adjustments to his treatment plans will continue to be necessary. *See generally* Turner Suppl., Exs. 1-3. However, Defendant Turner's physicians do not describe his conditions as acute or warranting any immediate intervention. *Id.* Indeed, the Court notes that Defendant Turner's follow-up appointments are scheduled for weeks or months in advance, *see* Turner Suppl., Ex. 4, and that he has yet to undergo a CAT scan and MRI that were recommended in September, *compare* Turner Mot., Ex. 4 (9/26/07 Letter from Dr. Balish) with Turner Suppl., Ex. 1 (12/12/07 Letter from Dr. Balish). The pace of Defendant Turner's

10

diagnostic tests thus do not suggest any particular exigency.

Defendant Turner next argues that his physicians' recent letters "reveal that [his] current regimen of medication has not stemmed the deterioration of his condition," and suggests that this again calls into question the Court's previous statement that his medical conditions are "under control." Turner Mot. at 5-6 (citing Exs. 4-6). Indeed, a number of Defendant Turner's physicians' letters note that his diabetes is not thoroughly controlled through the use of insulin. *See* Turner Mot., Exs. 4-6; Turner Suppl., Ex. 1. Nevertheless the Court continues to consider Defendant Turner's diabetes "under control," in the sense that it is being addressed through adjustments to his treatment regimen and does not appear to be acute at this point in time. Furthermore, as Defendant Turner's general physician noted in his September 26, 2007 Letter, "compliance [with an insulin therapy regime] is a large part of control as in all diabetics." Turner Mot., Ex. 6 (9/26/07 Letter from Dr. Messey). To that end, the Court observes that in the notes accompanying his most recent letter, Defendant Turner's neurologist states that Defendant Turner "indicates better compliance with regimen." *See* Turner Suppl., Ex. 1 (12/12/07 Letter from Dr. Balish) at 7. While the Court has no independent knowledge of Defendant Turner's compliance with his diabetes treatment, Dr. Balish's notes at least suggest that Defendant Turner may not always have strictly followed his treatment regimen.

Defendant Turner's neurologist's recent notes also state that Defendant Turner's "[b]lood sugar control [is] on the order of 200-300 *by report though does not bring in meter*," and that Defendant Turner "*indicates compliance* with the insulin regimen listed below." *Id.* at 4 (emphasis added). It thus appears that Defendant Turner's doctors' reports regarding the stability of his diabetes is, at least in part, based upon Defendant Turner's self-reporting. Indeed, many of

11

Defendant Turner's doctors' reports rely upon his self-reporting of symptoms and their severity. *See* Turner Mot., Exs. 4-6; Turner Suppl., Exs. 1-3. The Court therefore notes that it has a healthy skepticism of Defendant Turner's self-reporting. The Court's skepticism is based largely upon Defendant Turner's conviction for a crime involving fraud and deception. In addition, during one of Defendant Turner's sentencing-related Court appearances, the Court had the opportunity to observe Defendant Turner both inside the courtroom and after the Court hearing in the hallway. The Court noted that Defendant Turner appeared significantly more infirm and symptomatic during the Court hearing than he did outside the courtroom.

Finally, Defendant Turner asserts that his doctors' recent letters specify additional concerns about his medical condition that were not identified prior to sentencing. Turner Mot. at 5 (noting Dr. Balish's report that Defendant Turner suffers from progressive neurologic syndrome with tremor and myocolnus, severe neuropathy, and respiratory ailments) (citing Ex. 4 (9/26/07 Letter from Dr. Balish)). Many of these conditions, however, were described in the doctors' letters Defendant Turner provided prior to his sentencing, albeit not in as detailed terms. *See* Turner Mot., Ex. 3 at 9 (7/11/07 Letter from Dr. Balish, noting Defendant Turner's "yet undiagnosed tremor, worsening peripheral neuropathy," "refractory asthma" and "difficulty breathing"). Moreover, to the extent that Defendant Turner's recent doctors' letters raise new issues of damage to his kidneys and peripheral nervous system, as discussed above, those conditions are not described as acute or necessitating immediate intervention. Rather, his physicians' descriptions accord with this Court's previous understanding that Defendant Turner suffers from a number of chronic medical conditions, which may well progress over time, and which require continuous evaluation and medical care.

12

Defendant Turner's post-sentencing doctor's reports, including the most recent set solicited by the Court, do not indicate that Defendant Turner's various medical conditions are acute or likely to require immediate intervention. As such, they do not alter the Court's previous decision not to exercise its discretion by granting a downward departure under Section 5H1.4, or its conclusion that a sentence of imprisonment is reasonable in light of the Sentencing Reform Act's instruction to consider "the need for the sentence imposed . . . to provide the defendant with needed . . . medical care . . . in the most effective manner." 18 U.S.C. § 3553(a)(2)(D). Again, the Court reiterates that the BOP, upon reviewing all of Defendant Turner's medical records as of the time of his sentencing, did not indicate that it would be unable to care for him in a medical facility. *See* 9/7/07 Sent'g Tr. at 4:24-5:6; 41:15-42:3. Nothing in the most recent set of doctor's letters furnished to the Court appears likely to alter the BOP's previous assessment.

Defendant Turner stresses that "the ability of the Bureau of Prisons to treat Mr. Turner is not dispositive," and that the Court should also "consider efficiency and cost." Turner Mot. at 10-11 (citing *United States v. Jimenez*, 212 F. Supp. 2d 214, 217 (S.D.N.Y. 2000)). To that end, the Court notes that, as the Government pointed out during Defendant Turner's sentencing, Defendant Turner's medical care is currently paid for through the United States Government's Department of Veterans Affairs Programs. *See* 9/7/07 Sent'g Tr. at 23:8-12. As such, transferring the cost of Defendant Turner's medical care to the BOP during the duration of his incarceration would change the agency paying for his care, but in either case the federal government would ultimately shoulder the burden of his medical expenses. Defendant Turner also argues that "home detention is more appropriate because Mr. Turner's current physicians are in a better position to care for [him]," Turner Mot. at 11, and to provide him with the continuous

13

medical attention that he requires. This argument, however, is based only upon Defendant

Turner's speculation that the BOP will not be able to provide him with "treatment as effective as

the array of specialists with whom [he] has consulted for months," speculation that is

undermined by the BOP's indication that it will be able to treat Defendant Turner in a medical

facility. Furthermore, with respect to Defendant Turner's concerns regarding the continuity of

his care, as the Court noted during his sentencing, it will be incumbent upon Defendant Turner to

ensure that he supplies the BOP with his complete medical records prior to reporting to his

assigned facility, so that the BOP is in a position to provide him with necessary medical care

upon his arrival. *See* 9/7/07 Sent'g Tr. at 7:22-4; 45:21-56:14.

In sum, after a thorough review of the most up-to-date reports regarding Defendant

Turner's medical conditions, the Court continues to consider a sentence of imprisonment

reasonable and appropriate in light of the factors enumerated in 18 U.S.C. § 3553(a).

### III. CONCLUSION

For the foregoing reasons, the Court shall DENY Defendant Turner's Motion for Release

Pending Appeal. An appropriate Order accompanies this Memorandum Opinion.

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge